NORTHWEST ENGINEERING COMPANY, a Corporation, Appellant, v. GJELLEFALD-CHAPMAN CONSTRUCTION COMPANY, a Corporation, Respondent.

(222 N. W. 621,)

Opinion filed December 21, 1928.

*Aloys Wartner,* for appellant.

*Joseph J. Habiger (Thompson, Loth & Lowe,* of counsel), for respondent.

BURKE, J. This is an action in claim and delivery in which there was a verdict for the defendant and on a motion for a new trial the trial court made its order that a new trial should be granted unless the defendant shall within fifteen days after the service of a copy of the order upon it allow judgment to be taken against it for the immediate possession of the property described in plaintiff's complaint, or if possession cannot be had, judgment for the sum of $858.35 and interest thereon at the rate of 6 per cent per annum, and costs.

In compliance with this order the defendant within the time allowed filed notice of election to accept the modification of the verdict and judgment which was duly served upon plaintiff, and judgment was duly entered thereon, and the defendant deposited at the same time with the clerk of said court the sum of $1,089.67 for the plaintiff, the amount of judgment, interest and costs. Thereafter, the plaintiff duly appealed from said order and from the said judgment.

On the first day of July, 1926, the defendant was under contract with the city of Harvey, North Dakota, to dig certain deep sewers and ditches, a great portion of which were from eighteen to twenty-eight feet in depth, and through soil and clay difficult to dig, which information was communicated to the plaintiff by the defendant, and the plaintiff recommended to the defendant the machine which the defendant purchased from the plaintiff on that day, as a machine constructed so as to dig in a good and workmanlike, continuous and efficient manner to a depth of twenty-two feet, and suitable to such work. The contract

expressly guaranteed that the machine would dig to the depth of twenty-two feet and the defendant claimed that he knew nothing about the machine; was not familiar with its operation, and relying on the representations and warranty made to him by the plaintiff, he purchased the machine for $14,300, under a contract of sale reserving the title to the machine in plaintiff until paid. The machine was delivered at Harvey, North Dakota, and was tried out on the work which defendant had at that place, and also on a job in Illinois. The plaintiff furnished an expert to operate the machine who was paid by the defendant. Payments were made at different times by the defendant to the plaintiff until the sum of $8,341.65 was paid, leaving a balance of $5,958.35, payment of which was later refused by the defendant, upon the ground that the property was never worth to exceed the sum of $5,000, though, if said warranties had been complied with, it would have been worth the sum of $14,300. .

The defendant also alleges in its answer that it was agreed between the plaintiff and the defendant that the plaintiff should put the machine in shape to comply with said warranties and that a test should be made thereof and if the machine did not thereupon comply with said warranties the plaintiff should cancel its claim for the unpaid purchase price and the machine should become the absolute property of the defendant; that the plaintiff did attempt to cause the machine to comply with the said warranties but that the same failed to do so, and accordingly the plaintiff's claim for the purchase price became extinguished and the defendant became and thereafter remained entitled to the absolute ownership and possession thereof. .

After the defendant had refused to pay any more of the purchase price and when there was still $5,958.35 unpaid the plaintiff and the defendant had a conference in Chicago, at which conference Mr. Gjellefald testified in substance: We met in Chicago with the North-west people; I told them that this machine wouldn't dig twenty-two feet deep; they stated it would dig twenty-two feet deep; and they said: "Well, we will come out to Harvey, North Dakota, and we will send our field man out there, and if that machine digs twenty-two feet, all right, and if it doesn't, all right," and then I gave them another trial and renewed the notes on the same day. They came out to Harvey,

in 1927, to see if the machine would dig twenty-two feet deep and it wouldn't.

In the trial of the case, the trial court said: "Under this answer the defendants claim a contract effecting a settlement, whereby the machine should become the property of the defendants without any further payment, and that the purchase price unpaid should become extinguished, and that the defendant should be found to be the absolute owner. I am inclined to think if the defendants wish to accept that as their defense in this case, that I will allow it to stand, but not both."

That is, the trial court confined defendant to the settlement, the questions of a breach of the contract guaranteeing the machine to dig twenty-two feet and to the implied warranty that the machine was constructed, intended and adapted to the kind of work for which the defendants purchased it. The case was submitted to the jury on this theory and all other elements of damages were specifically excluded in the instructions.

At the trial, O. N. Gjellefald, president of the corporation, testified that the machine as delivered was worth the sum of $9,200, and that if it had been as warranted it would have been worth the sum of $14,300.

Motion for a new trial was made upon the minutes of the court, the pleadings, exhibits and testimony of the witness for the defendant, one O. N. Gjellefald, and upon the instructions of the court to the jury, as follows:

First: "Excessive damages appearing to have been given under the influence of passion and prejudice."

Second: "Error in the assessment of the amount of recovery. . . ."

Third: "That the verdict is not sustained by the evidence, it appearing by the uncontradicted evidence of the plaintiff and defendant that defendant promised and agreed to pay for the machine the sum of $14,300. That defendant did pay thereon the sum of $8,341.65 leaving a balance due on the purchase price of the sum of $5,958.35. . . . The defendant's witness, O. N. Gjellefald, admitted that the machine was worth $9,200 in the condition that it was in," and that under the testimony there was still due the plaintiff "the sum of

$858.35," which was the least verdict the jury could find for the plaintiff.

Fourth: That "said verdict is contrary to the evidence in this that the only evidence that was offered was on the theory, if at all, of proving the difference between the value of the goods at the time of the delivery to the defendant and the value they would have had if they had answered to the warranty."

Fifth: That the court erred in instructing the jury as follows: "You are instructed that the defendant has a right to retain and use the machine without impairing its right to damages from breaches of warranties; that its continued use of the machine is no defense to its claim for such damage. And you are instructed that if such warranties or one or more of them have been breached and damage has been sustained by defendant therefrom as explained in other of these instructions, which is equal to the amount of the unpaid purchase price; then the price has been extinguished thereby and the defendant is entitled to the machine and your verdict must so find."

Sixth: ". . . Where there is a breach of warranty by the seller, the buyer may at his election, that is, the defendant in this case, accept or keep the goods, and set up against the seller a breach of warranty by way of recoupment in diminution, or extinguishment of the purchase price."

Seventh: "The defendants are, under this provision of the statute. The defendants here, by their answer and their position in the case is that while they purchased these goods and have still retained them rightfully as they claim, that they were, nevertheless not of the value termed and agreed to be paid therefor, and therefore are entitled to recoupment or a reduction in the price that was agreed to be paid down to the point of the actual value of the machine, and by reason of a breach of the contract itself, or the breach of the warranty; and further, the defendant had the right to accept or keep the goods and maintain an action against the seller for damages for the breach of the warranty."

Eighth: "The measure of damage for the breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of the warranty."

It is the contention of the defendant and it was the theory of the

trial court that the defendant had a right to recoupment against the plaintiff for any damages sustained by reason of a breach of warranty.

Under § 6002a69, Supplement Comp. Laws 1913:

"Where there is a breach of warranty by the seller; the buyer may, at his election—(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price; (b) accept or keep the goods and maintain an action against the seller for damages for the breach of warranty."

Under § 6002a15: "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment, . . . there is an implied warranty that the goods shall be reasonably fit for that purpose."

In the instant case the defendant did not rescind the contract but elected to keep the machine and set up against the plaintiff a breach of warranty by way of recoupment in diminution or extinction of the price. The answer comes squarely under §§ 6002a69, and 6002a15, supra. It appears from the record that the defendant, without seeing the machine or knowing anything about its fitness for the work at Harvey, made known to the plaintiff the particular purpose for which the machine was required and relying upon the judgment of the plaintiff, purchased the machine. Under this section there is an implied warranty that the machine was reasonably fit for that purpose, independent of any contract between the parties, and such warranty is not inconsistent with the express warranty. Subd. 6, § 6002a15, supra.

The defendant was within the law in keeping the machine and setting up the breach of the express warranty by way of recoupment or extinction of the price, and since the written warranty was not exclusive nor inconsistent with the implied warranty, the defendant was also within its rights in claiming damages, by reason of the breach of the implied warranty. Minneapolis Steel & Machinery Co. v. Casey Land Agency, 51 N. D. 832, 201 N. W. 172; Allis-Chalmers Mfg. Co. v. Frank, ante, 295, 221 N. W. 75.

There is no error in the instructions given, as they were entirely justified, and even necessary under the statute.

The motion for a new trial was based largely on subdivision 5 of § 7660, Comp. Laws 1913, which reads as follows:

"Excessive damages appearing to have been given under the influence of passion or prejudice. Where a new trial is asked for on this ground, and it appears that the passion and prejudice affected only the amount of damages allowed, and did not influence the findings of the jury on other issues, in the case, the trial court on hearing the motion, and the supreme court on appeal, shall have power to order a reduction of the verdict in lieu of a new trial; or to order that a new trial be had unless the party in whose favor the verdict was given remit the excess of damages."

The jury allowed the defendant $5,958.35 damages, not in so many words, but they found from the evidence that the damages of the defendant equalled the difference between the purchase price of the machine and the amount which the defendant paid, which was $5,958.35, but when it was pointed out to the court, in the motion for a new trial, that the president of the corporation had testified that the machine was actually worth $9,200, the court took that into consideration and ordered a new trial, or in lieu thereof, a reduction of the amount of damages, in the sum of $858.36, which entitles the plaintiff to a judgment for that amount with interest.

In the case of Reid v. Ehr, 36 N. D. 552, 162 N. W. 903, and Wagoner v. Bodal, 37 N. D. 594, 164 N. W. 147, this court held that a "motion for a new trial on ground of excessive damages, appearing to have been given under passion or prejudice is addressed to discretion of trial court, and appellate court will not interfere except for abuse of discretion." Skaar v. Eppeland, 35 N. D. 116, 159 N. W. 707.

Subdivision 5 of § 7660, was amended in 1923, and under the amended act, where a new trial is asked for on the ground of excessive damages and it appears that the passion and prejudice affected only the amount of damages allowed, and did not influence the jury on other issues in the case, the trial court on hearing the motion, and the supreme court on appeal, shall have power to order a reduction of the verdict in lieu of a new trial; or to order that a new trial be had unless the party in whose favor the verdict was given remit the excess of damages.

The verdict in this case was given to the defendant and after hearing on motion for a new trial, defendant was given the option of remitting

the damages which it appears from the record might have been allowed, or a new trial. The defendant elected to remit by serving and filing its notice of election and depositing with the clerk the sum of $1,089.67, the amount of the damages, together with interest and costs of suit. The amendment does not take away from the trial court the discretion which it had but enlarges its power by authorizing it to remit damages or grant a new trial. The motion is still addressed to the sound discretion of the trial court and it is well settled that this court will not interfere unless there has been an abuse of discretion. We cannot say that there has been in this case and the judgment and order are affirmed.

NUESSLE, Ch. J., and BIRDZELL, BURR, and CHRISTIANSON, JJ., concur.