[File No. 7351]

ROSELLA KEMMER, Appellant, v. SUNSHINE MUTUAL
INSURANCE COMPANY, Respondent.

(57 NW2d 856)

Opinion filed April 2, 1953

*Wm. L. Paulson,* and *Philip L. Scherer,* for appellant.
*Coffey, Mackenzie* and *Jungroth,* for respondent.

GRIMSON, J.  Plaintiff was the owner of a farm located at the edge of Litchville in North Dakota.  She lived in a house on that farm of which only the first story had been built.  That was a basement story, four feet in the ground and four feet above the ground.  The roof was flat, covered with two layers of heavy roofing on boards plus two or three applications of heavy tar.  The house was 32 x 40 ft., containing three bedrooms, a sitting room, kitchen and dining room combined, and a wash room.  She had it completely furnished.  On July 9, 1948, she took out an insurance policy in the defendant insurance company to protect household goods, personal effects and other personal property located in that house, from loss by fire, lightning, windstorm and hail to the amount of $2000.00.  She paid the premiums on that policy.  In late October or in November, 1949, she left her home and went to Corpus Christi, Texas.  She was there interested in a curio business.  She did not return until August 15, 1950.  She left all her household goods, furnishings and personal effects in her Litchville home and in good condition.  She left a key to the house with a neighbor "to go and look over the premises and see how things are once in a while."  About June 25, 1950, a severe hailstorm struck the premises, followed by rain which lasted from 30 to 40 minutes.  Some 45 to 80 holes were punched in the roofing by the hailstones.  Water leaked through the roof and everything in the house became soaked with water.  On June 28th a neighbor notified the plaintiff by mail of the damage to her property.  She then notified the insurance company and made a claim for damages.  She disposed of her business interest at Corpus Christi as soon as she could and return to Litchville on Aug. 15, 1950.  The defendant insurance company offered her $67.00 in payment of her damages.  The policy was in force at the time of the hailstorm.

This action is brought upon the insurance policy for the damages resulting to her household and personal effects from the hailstorm of June 25, 1950, which she alleges in the complaint amounted to $2000.00. The defendant answers by a general denial, admitting the policy and alleging as an affirmative defense that the provisions of the policy had not been complied with, that plaintiff neglected to use reasonable means to preserve and save the property after the losses complained of and completely abandoned the property. Other allegations in the answer are not sustained by any evidence, and were apparently abandoned.

The case was tried to the jury who found for the plaintiff in the sum of $306.25. The plaintiff made a motion for a new trial which was denied by the court. This appeal is from the order denying that motion.

Both in her notice of appeal and in a separate specification the plaintiff demands a trial de novo in the supreme court. The law does not entitle her to that. Sec 28–2732 NDRC 1943 authorizes a trial de novo on appeal to the supreme court only in cases tried to the court alone.

This court has repeatedly held that a case tried to the jury is not triable de novo upon appeal to the supreme court. In all cases tried to the jury a review in the supreme court is limited to the errors assigned or apparent on the face of the judgment roll. See Ripplinger v. Otten, 77 ND 531, 44 NW2d 60; First National Bank, Crary v. Bremseth, 60 ND 401, 234 NW 758; Baird v. First National Bank, 60 ND 286, 234 NW 71, and cases cited.

With her notice of motion for a new trial plaintiff filed specifications of error. All those specifications are classified under errors in law occurring at the trial. Some questions relating to the cause of the condition of the household goods on August 15, 1950, were objected to on the ground that no sufficient foundation had been laid and the objection was sustained. We find no reversible error in the rulings of the court on those questions. Two of the questions on which error is assigned were answered later. Most of those errors are assigned in connection with the ruling of the court that evidence of the value of the household

goods on August 15, 1950, some 52 days after the hailstorm was inadmissible.

The evidence showed that the plaintiff had left the premises before Dec. 1, 1949. The premises had remained vacant thereafter. The plaintiff was allowed to testify that the property then was in good condition, and to its value as of that time. The defendant, however, showed that in the spring of 1950 some water had seeped into that basement. A Mr. Larson with whom she had left the key found water in the basement in early May 1950, more than a foot deep. He had pumped it out. He again found water in the basement about the 4th of June, probably five or six inches deep. He again pumped it dry. On both occasions he saw the furniture and a trunk standing in the water. As to what damage was caused thereby is not shown but the defendant is not liable under its policy for that damage, if any. Right after the hailstorm one John Smith examined the property. He then found water in the basement 8 or $8\frac{1}{2}$ inches deep. He found the holes in the roofing. He saw furniture in the kitchen and a table with wet covering. He then notified plaintiff by ordinary mail and she again by ordinary mail asked him to get the key and show the insurance adjuster through the house. Three weeks after the storm the adjuster came and Smith showed him through the house. At that time the water was all gone. Smith observed the veneer of the piano was loosened up and the veneer of a violin case was coming apart. A daybed and a chest of drawers were wet. The chest was made of three ply quarter inch board, glued together. A pair of shoes was full of water. A week or ten days after the adjuster was there Mr. Smith, at the request of plaintiff, strung clothes lines in the middle of the living room and hung up to dry some of the clothes that were in the cabinets, trunk and cedar chest. In a couple of days he would fold them, lay them on a table and hang up some more clothes. He was in the process of thus drying out the clothes when plaintiff came back on August 15th.

Plaintiff was allowed to testify as to the condition and value of her household goods before she left for Corpus Christi in the fall of 1949. That was proper. The property was of a kind that would remain in the same condition under ordinary cir-

cumstances. State ex rel. McKittrick v. Graves, 346 Mo 990, 144 SW2d 91. While she was not allowed to testify as to its value on her return on August 15, 1950, she was allowed to testify as to its condition at that time and she described some of it as ruined. She said the bedding and clothes were "moldy, blue-gray, rotten" and the veneered material on the furniture was "warped and off, the varnish and paint all off." The question is as to whether the court, under these conditions shown by the evidence, was in error in ruling out her testimony as to the value of the property on August 15, about 52 days after the hailstorm.

The policy provided that the defendant should not be liable for loss caused by the "neglect of the insured to use all reasonable means to save and preserve the property at or after a loss." The plaintiff had nothing done to preserve the property for about four weeks after the hailstorm. In the meantime the water on the furniture had dried, some of the effects thereof are shown. The clothing and bedding had remained wet for some four or five weeks and mold had developed.

This evidence shows that the conditions with regard to the furniture, bedding and clothing underwent considerable change between the time the plaintiff left in the fall of 1949 and the time she examined her property on Aug. 15, 1950. Some of those changes may have occurred before the storm and some of them could have been prevented if proper care had been given to these furnishings immediately after the storm. These changes further depreciated the value of the property and for some of those changes the defendant was not responsible. Clearly the ruling of the court when it refused to admit testimony of the value of the property on August 15, 1950, was correct. This ruling did not in any way affect the plaintiff's right of action against the defendant as argued by the plaintiff. It simply excluded evidence which could not be properly considered in determining the amount of plaintiff's loss. There still remained whatever pertinent evidence was offered on that issue and which the jury could properly consider in determining plaintiff's loss.

In the absence of a showing that the essential conditions were.

the same an issue as to the existence of a particular condition cannot be proved by evidence of the condition concerning that issue existing at a considerably later time. 32 CJS Evidence, Sec 585, P 439.

In Johnson v. Charles William Palomba Co., 114 Conn 108, 157 A 902, 80 ALR 441, it was held that where the situation is transitory, evidence of condition of things a considerable time after the event is not admissible to show condition of time of event. In Alabama Power Co. v. Owens, 236 Ala 96, 181 So 283, 3 NCCA NS 524, the court held that conditions not inherently lasting or not likely to continue the same after much lapse of time are not admissible without evidence that they have remained unchanged. See also Boles v. Montgomery Ward & Co., 153 Ohio State 381, 92 NE2d 9; Hulett v. Great Atlantic and Pacific Tea Co., 299 Mich 59, 299 NW 807; Appalachian Stave Co. v. Pickard, 260 Ky 720, 86 SW2d 685.

"Evidence which is otherwise competent may relate to facts too remote in point of time . . . to be admissible. The admissibility of such evidence is a matter largely in the discretion of the trial court." 20 Am Jur Evidence, Sec 249, P 243.

"Generally speaking, however, the question whether evidence of the condition of a thing or place before and after an event is relevant and admissible to prove its condition at the time of the event is, to a large extent, dependent upon the character of the thing or place and the nature of the condition sought to be proved, as constant or variable, and upon the existence of any change during the intervening period and to some extent upon the length of that period." 20 Am Jur Evidence, Sec 306, P 284.

"Whether evidence should be excluded for remoteness rests largely in the discretion of the trial court." Kugling v. Williamson, 231 Minn 135, 42 NW2d 534. See also Long v. Leonard, 113 Vt 258, 32 Atl2d 679.

"Whether evidence offered is too remote to be admissible upon the trial of a case is for the trial court to decide in the exercise of sound discretion; and its action in excluding or admitting the evidence will not be disturbed by the appellate court unless

it appears that such action amounts to an abuse of discretion." Yuncke v. Welker; 128 W Va 299, 36 SE2d 410.

The final group of errors assigned by plaintiff relates to the examination of the witness, John Larson. He had in his testimony definitely fixed the times when he pumped out this basement apartment in May and June 1950. He was asked why he was so definite about those dates and answered that he had refreshed his memory from a book where he marked down all payments he made. The plaintiff moved to strike out the answer on the ground that it was not the best evidence. That was denied and the ruling is assigned as error. There is no merit to that motion. The contents of the writing in the book is not in issue. The reference to it was only to explain why he was so definite in fixing the time. The matter is not within the best evidence rule.

The best evidence rule applies only when the terms of the document are in issue. See 4 Wigmore on Evidence, 3rd Ed. Sec 1178, P 316 and Sec 1242, P 464. In this case there was no attempt to prove by parol the book entries. They were used only as a reference to fix the date the witness had pumped the water out of the basement. "The rule requiring the production of documentary originals . . . applies only when 'the purpose is to establish its (a document's) terms.' When the purpose is only to establish a collateral fact the rule is not applicable. II Wig Ev Sec 1242, 1252; 5 Chamb Ev Sec 3583." Pulsifer v. Walker, 85 NH 434, 159 Atl 426, 81 ALR 1052.

The order of the District Court is affirmed.

MORRIS, C. J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.