Ernest GRAVSETH, Individually and as Trustee for North Dakota Workmen's Compensation Bureau, Plaintiff and Respondent,

v.

FARMERS UNION OIL COMPANY OF MINOT, North Dakota, a Corporation, Defendant and Appellant.

No. 7931.

Supreme Court of North Dakota.

April 19, 1961.

McGee, Van Sickle & Hankla, Minot, for defendant and appellant.

Ilvedson, Pringle, Herigstad & Meschke, Minot, for plaintiff and respondent.

TEIGEN, Judge.

This is an appeal from the judgment, and from the order of the trial court denying appellant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff alleges that while driving eastward on County Highway No. 16, approximately nine miles south and four miles east of Minot, he was suddenly and without warning of any kind confronted with defendant's truck in a stuck position in his way of travel; that his vehicle rammed into the rear of defendant's truck causing him damage; that defendant's truck, operated by its employee, had become stuck in a snowdrift at the base of a hill; that it was negligently and carelessly left and abandoned in that position and that defendant's employee did negligently, carelessly and in violation of law fail to place out on the highway warnings of any kind; that he knew of the extremely dangerous position of his truck and of the slippery and dangerous condition of the hill which he had driven down before he had become stuck.

The defendant admits there was a collision. It admits it is a domestic corporation, that the truck driver was its employee, and that it was the owner of the truck. It admits on the day in question its said truck became stuck in a snowdrift and that plaintiff drove his automobile into said truck. The defendant claims the collision was caused by the negligence and carelessness of the plaintiff, which so contributed to the collision as to prevent his recovery.

As a counterclaim defendant asked judgment against plaintiff for damages to its truck and for the loss of 610 gallons of diesel fuel. The reply denies the allegations of the answer.

At the close of the entire case the defendant moved the court to direct a verdict in its favor on the ground that plaintiff wholly failed to prove his cause of action, and on the further ground that the evidence showed the plaintiff was guilty of contributory negligence as a matter of law. These motions were denied. The case was submitted to the jury and the verdict was returned in favor of the plaintiff in the amount of $19,809.75. Judgment was entered thereon and defendant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. This motion was denied. The defendant appealed from the judgment and from the order denying the motion. The grounds argued are the insufficiency of the evidence to justify the verdict, errors of law and excessiveness of the verdict.

It is the basic contention of the appellant that the negligence of the appellant's employee was not the proximate cause of the injury; that the plaintiff was guilty of negligence as a matter of law and that his negligence contributed proximately to his injury.

On two occasions during the trial the appellant moved for a mistrial, which motions were denied by the court, and it now specifies this as error. The appellant also requested certain instructions and specifies it as error that the court refused to give one of them.

The facts are not in dispute. The appellant introduced no evidence. The appellant's two-ton International truck with tank, loaded with 1,000 gallons of fuel, while traveling in an easterly direction on County Highway No. 16, had become stuck in a snowdrift about 200 feet below the crest of a hill. The highway for a distance of about twenty feet behind the truck was completely covered with the snowdrift and from that point to the crest of the hill it was covered with

compacted snow and ice and was very slippery. The appellant's employee, while proceeding over said highway, was traveling at a rate of speed of from thirty to thirty-five miles per hour. When he arrived at the crest of said hill he discovered the snowbank about halfway down the hill. He testified he tried to stop. He applied the brakes but was unable to stop because of the slippery condition of the highway. The truck continued forward, went into the snowbank and became stuck. The highway was twenty to twenty-one feet in width. The truck was in the center thereof angled slightly to the left or northeast. The truck carried no warning signals or flags. The appellant's employee was alone. He left the truck and proceeded on foot to the nearest farm to the east, leaving the truck unattended and without having placed on the highway to either side of it any warning signals or flags.

The plaintiff, driving his 1958 Volkswagon from Minot, had proceeded south on Highway No. 83 to the intersection with County Highway No. 16 where he turned east. He drove east on County Highway No. 16, a distance of four or four and one-half miles, to the point where the truck was stuck. The county highway was a high, well-graded, graveled surface highway in good winter driving condition. There had been a severe snowstorm the day before and the fields and the ditches were filled with snow; however, the county highway was free and clear of snow except for a few small "finger drifts." It clearly appears the highway for this first four or four and one-half miles was not hazardous. It was in good winter driving condition. The plaintiff was driving in third gear and at a speed of from thirty to forty miles per hour. This is the standard operating procedure for a Volkswagon. He testified that when he arrived near the crest of the hill in question, he was traveling from thirty to thirty-five miles per hour and still in third gear. The hill in question separated two ravines.

According to the testimony of the Highway Patrolman, who investigated the accident, one driving a Volkswagon could first see the top of the truck where it was stuck a distance of forty feet west from the crest of the hill. At that point the compacted snow and ice had not begun. The compacted snow and ice began at the crest of the hill and could be seen by one driving a Volkswagon at a point forty feet back where the truck first came into view. At that point, however, only the top of the truck could be seen and not the snowdrift. He could not see that the truck was stuck in a snowdrift. The testimony of the Highway Patrolman agrees substantially with the testimony of the plaintiff. The plaintiff testified he applied his brakes as soon as he saw that the truck was stopped, which was when he saw it was in a snowbank. The wheels of the Volkswagon slid and it continued on down the hill. He testified he attempted to turn but the vehicle did not turn. It slid into the back end of the truck, resulting in plaintiff's injuries for which he seeks recovery in this action.

The plaintiff in his complaint averred the appellant's employee, in violation of law, failed to place warnings of any kind upon the highway. The court instructed the jury in part relative thereto as follows:

"Whenever a motor truck is stalled and disabled upon the traveled portion of any highway within 500 feet of a hillcrest, or other obstruction to view, a warning signal in that direction shall be so placed by the truck driver as to afford ample warning to other users of the highway, but in no case less than 500 feet from the stalled and disabled vehicle. The 'warning signal' last mentioned in the daytime shall be a red flag, not less than 12 inches square, with standards to support such flag."

The instructions were in written form and were not challenged by specifications of error; therefore, the instruction quoted became the law of the case. In considering whether or not the appellant's employee driver was negligent and,

if negligent, whether his negligence proximately caused the injury claimed, we apply the law of the case. Montana-Dakota Utilities Co. v. Amann, N.D., 81 N.W.2d 628; Montana-Dakota Utilities Co. v. Culver, N.D., 80 N.W.2d 541, and Cochrane v. National Elevator Co., 20 N.D. 169, 127 N.W. 725.

The appellant's employee testified he was enroute to make delivery of burner fuel to a customer when the truck became stuck in the snowdrift. He testified he was traveling from thirty to thirty-five miles per hour as he came over the crest of the hill when he saw the snowbank; that he applied the brakes; that he kept the brakes applied for a distance of about 100 feet but was unable to stop until the truck ran into the snowbank where it became stuck. The snowbank measured about twenty feet from the rear of the truck to the west. He admits he put out no warning flags or warning devices of any kind; that he had none with him; that when asked if he attempted to put up anything else on the road to warn others, he answered: "I didn't have anything that I could have put up." He left the truck to seek help and went in an easterly direction because it was closer to a farm house. He then went to Minot. The evidence does not disclose the method of getting to Minot, which was some sixteen miles distant. He returned to the scene with a snowplow and in the company of two employees of the County Highway Department. They arrived very shortly after the accident. The appellant's employee also testified that County Highway No. 16 was in good driving condition all of the way from U. S. Highway No. 83 to the crest of the hill in question; that from that point and easterly to the truck it was covered with compacted snow and the snowdrift. He knew it was slippery from the crest of the hill to the truck. When he left the truck, he first walked westerly a short distance and then decided it was closer to a farm house to the east. He then reversed his direction and went east. He thus had a second opportunity to view the condition of the highway.

The accident occurred in the daytime at about 1:00 P.M. The weather was clear and cold. There was good visibility. It was November.

■■ Without expressing approval or disapproval of the instruction quoted above, but accepting it as the law of the case, we will proceed to the question on the sufficiency of the evidence to sustain the verdict. It depends on whether the appellant was entitled to a directed verdict at the time the motion for a directed verdict was made. Erdahl v. Hegg, N.D., 98 N.W.2d 217; Rokusek v. Bertsch, 78 N.D. 420, 50 N.W.2d 657; Filler v. Stenvick, 79 N.D. 422, 56 N.W.2d 798; Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588. The question therefore is whether the evidence, when viewed in the light most favorable to the plaintiff, will sustain the verdict. Erdahl v. Hegg, supra; Fagerlund v. Jensen, 74 N.D. 766, 24 N.W.2d 816; Schnoor v. Meinecke, 77 N.D. 96, 40 N.W.2d 803.

■■ The evidence concerning the conduct of the appellant's employee establishes he abandoned the stalled motor truck upon the traveled portion of a highway within 500 feet of a hillcrest. The driver of the truck had not placed a warning signal in the direction of the hill at a distance of 500 feet or more from the truck. It was only 200 feet from the back of the stalled truck to the hillcrest. Such a warning signal, if it was placed 500 feet back from the truck, would have been placed 300 feet to the west of the hillcrest and in plain view of oncoming traffic. The plaintiff had requested the instruction pertaining to warning signals when a motor truck is stalled. It was premised on Sections 39-11-39 and 39-11-40, NDCC, which are statutory provisions requiring certain equipment to be carried on motor trucks and providing for the placing of warning devices described as equipment under certain circumstances. The instruction given is premised on these

statutes and is a part of the law of this case. A violation of a statutory rule relating to safety upon the highways is evidence of negligence. Spenningsby v. Peterson, N.D., 67 N.W.2d 913; Knudsen v. Arendt, 79 N.D. 316, 56 N.W.2d 340.

We are, therefore, satisfied that the evidence is sufficient to sustain the jury's finding of negligence on the part of the appellant. The appellant does not contend there was no negligence per se but argues the negligence was not the proximate cause of the accident. It is the position of the appellant that if the appellant's employee was guilty of negligence, the causal connection between his negligence and the accident was broken by the intervening cause brought about by the plaintiff; that the proximate cause of the injury sustained by the plaintiff was brought about by the negligent acts of the plaintiff himself and such negligence on the part of the plaintiff was an efficient intervening cause. It argued the plaintiff's negligence was the proximate cause of the accident and that he was guilty of contributory negligence as a matter of law.

Questions of negligence, contributory negligence and proximate cause are questions of fact for the jury, unless the evidence is such that reasonable men can draw but one conclusion therefrom, in which event such questions become questions of law for the court. Cose v. Towner County, N.D., 102 N.W.2d 538; King v. Railway Express Agency, Inc., N.D., 94 N.W.2d 657; Goulet v. O'Keeffe, N.D., 83 N.W.2d 889; Killmer v. Duchscherer, N.D., 72 N.W.2d 650, and other cases.

The gist of appellant's argument is that it had stormed the day before. The fields and the ditches were filled with snow. The plaintiff was familiar with the highway and had a clear and unobstructed view at all times for a distance of from 150 to 175 feet or more. When he observed the appellant's truck, it was 250 feet in front of him.

He observed the truck before coming to the crest of the hill and at the crest of the hill he had an unobstructed view of the truck, snowdrift and road ahead. The truck was painted green with yellow numbering. It was some eight feet in width and some seven feet in height with a cabinet type box on the rear. The plaintiff testified he thought he could stop. Appellant argued plaintiff did not turn out, although plaintiff testified he had tried. On these premises appellant argues the plaintiff was negligent as a matter of law. Appellant in his argument admits that plaintiff had no control of his vehicle after he passed the crest of the hill when he stated:

"* * * it is undisputed that the Volkswagon slid from the top of the hill, some 200 feet to 250 feet into a snowbank that was some 3 feet deep and hit the rear end of Defendant's vehicle, with sufficient force to cause the personal injuries complained of as well as the damage to his vehicle."

Appellant argues that this was negligence; that plaintiff, who should have had his vehicle under control at all times, was driving so fast that he was unable to stop in time. He cites in support of his argument Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424, and Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266.

It is established without contradiction that the plaintiff's vehicle slid 200 feet into the back of the appellant's truck. It is also established that the plaintiff could see the top part, perhaps the upper half of the appellant's truck, a distance of 240 feet therefrom. According to the measurements, it was 200 feet from the crest of the hill to the back end of the truck. The condition of the highway changed commencing at the crest of the hill. From that point to the truck, except for the last twenty feet which were covered by the snowdrift, the highway was completely covered with compacted snow and ice. The court instructed the jury on the emergency rule as follows:

"A person operating an automobile must at all times have it under such control that it may be stopped at any time within the range of vision of the driver, except and unless a *sudden emergency* should arise which could not have been reasonably anticipated by the driver. When a sudden emergency arises in which only a small interval of time is given the driver in which to act, he is not to be charged with negligence because he did not do everything that one might do with more time and opportunity in which to act. However, where the emergency or situation of peril arises because of a driver's own negligence, the *emergency rule* cannot be invoked on his behalf."

The plaintiff was forty feet distant from the beginning of the slippery highway when he could first see the truck. He testified without contradiction that it took him about one second to apply his brakes. If we allow one second reaction time in which to apply the brakes after seeing the truck, his vehicle would have traveled forty-four feet at thirty miles per hour, or four feet more than the distance to the crest of the hill where the compacted snow and ice commenced. The appellant admits, and the testimony substantiates, the plaintiff's vehicle slid from the top of the hill some 200 feet into the back end of the truck. The plaintiff testified he also attempted to turn out but the vehicle would not turn and kept going straight ahead. "It slid right in the back end of it."

The appellant's employee had been confronted with a similar situation earlier. He testified as follows:

"Well, I was driving down Highway 16 and come to this little draw going up this hill and when I got to the top of the hill as I was going down on the other side I noticed that the road was blocked so I applied my brakes and run on into the drift and got stuck."

He also testified he was driving between thirty and thirty-five miles per hour; that he had applied his brakes approximately 100 feet before the truck came to a stop in the snowbank and that his truck had gone into the snowbank, a distance of from twenty to thirty feet, before it stopped.

There is no specification of error assigned to the instruction on the emergency rule. It is also the law of the case. We feel the plaintiff could not be held to the same accountability as he would be under normal circumstances of coming upon a parked truck in the center of a highway with no other distractions. If the plaintiff should have anticipated that the truck was stopped when he first saw it, he could not be said as a matter of law to be bound to anticipate all of the other circumstances that were confronting him. In a situation of that kind a person's mental faculties and physical reactions cannot be expected to respond as quickly or as correctly as if there had been no distractions and time for deliberation.

In Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761, this principle was applied where the driver of the car was temporarily blinded by glaring lights of an approaching car immediately prior to colliding with a parked car. In Spenningsby v. Peterson, supra, this principle was also applied where the driver's vision was obscured by an unexpected snowsquall immediately before collision with a truck. In these cases this court held that a jury might find the driver free from contributory negligence where the driver's ability to see was interfered with by an agency which was unforeseen and beyond his control.

In this case the plaintiff had vision of at least 150 to 175 feet ahead at all times. He saw the top of the truck when it was 240 feet distant. At that point he was only forty feet distant from where the highway became slippery from compacted snow and ice. Driving at the rate of from thirty to thirty-five miles per hour on this county highway, prior to coming to the crest of the hill, was certainly reasonable. When the truck first came into view, the plaintiff did

not see it was stuck. He could not see the snowdrift, nor could he see that the slippery condition of the highway which commenced at the crest of the hill continued on the downslope leading to the truck. Seeing only the slippery portion of the highway was no cause to stop. However, to have avoided the accident it was necessary to stop, or to have taken other evasive action. The plaintiff decided to stop and testified he thought he could. When he saw the vehicle was not stopping, he attempted to turn out but it did not turn. We can assume one reason it did not turn is that the wheels were sliding. The plaintiff is not held accountable to use the same judgment which a reasonable and prudent person would have used, if he were not confronted with the sudden emergency.

■ If we assume it was his duty to stop as soon as he could see the truck over the crest of the hill, his vehicle was then at a point on the highway only forty feet distant from where the highway was covered with compacted snow and ice. Therefore, he had forty feet in which to stop. Allowing for reaction time alone, his vehicle traveled the remaining forty feet before the brakes could be applied and at that point the brakes were not effective.

"Negligence will not be imputed to a plaintiff because of his conduct when faced with a sudden and unexpected emergency, which he had no reasonable grounds to anticipate." Marron v. Elmquist, 132 Pa.Super. 12, 200 A. 207, 209. Quoted with approval in Lostegaard v. Bauer, supra.

"No hard and fast rule can be laid down to determine whether a motorist was guilty of contributory negligence in failing to stop or to turn aside to avoid a collision with a stationary vehicle obstructing the highway. The facts and circumstances of each particular case must be considered." Lostegaard v. Bauer, supra [78 N.D. 711, 51 N.W.2d 761].

■ We have previously determined that under the law of this case, the finding by the jury that the appellant's employee was negligent is supported by the evidence. Under the law of the case a sudden emergency was created by the failure on the part of the appellant's driver to have placed a warning signal at least 500 feet from the stalled truck in the direction of the hillcrest, thus affording no warning to other users of the highway.

"Where a traveler upon or across a highway is confronted by a sudden emergency created by the negligence of another and not by his own fault, he is not held to the same degree of care and prudence as is ordinarily demanded of a person who has time for deliberation and the full exercise of his judgment, and he is not guilty of contributory negligence if he acts as an ordinarily prudent person would act under like circumstances." 61 C.J.S. Motor Vehicles § 460, p. 14.

■ We are satisfied, therefore, that the question of contributory negligence was one for the jury. Considering the facts and applying the law of the case, there were circumstances from which reasonable men might draw different conclusions. The question of negligence and contributory negligence of plaintiff was for the jury to determine. Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761; Skramstad v. Miller, 78 N.D. 450, 49 N.W.2d 652; Jondahl v. Campbell, 61 N.D. 555, 238 N.W. 697.

The appellant next specifies it as error when the court on two occasions during the trial denied a motion for mistrial.

On direct examination of the plaintiff, pertaining to the question of whether or not warning signals had been placed, counsel asked:

"Q. Do you remember when you came back and the snowplow picked you up did you see any there at that time?

"A. No, there wasn't."

Counsel for the appellant then inquired if this was something that occurred after the accident, to which counsel for the plaintiff answered "yes." Thereupon counsel for the appellant moved that the answer be stricken as improper. This was overruled. Counsel for the plaintiff then asked this question:

"In other words, when you, immediately after the accident, came walking back when you saw the snowplow and somebody gave you a parka, you said now as you proceeded up that hill again and over it did you see any warning device of any kind such as flag or flares?"

To which the plaintiff answered:

"No, I didn't, there wasn't any there."

Counsel for the appellant, with permission of the court, then asked the witness:

"Q. This was after you met the snowplow and after they had given you a parka?

"A. That's right."

Counsel for the appellant moved for a mistrial on the ground that the area of the question was encompassing a time after the accident and, therefore, was prejudicial and misleading. The court denied the motion. The incidents referred to in the questions and answers, according to the evidence, occurred almost immediately after the accident. The plaintiff was alone at the accident scene. He got out of his car, walked a short distance east, and heard the snowplow coming from the west. He turned and saw the snowplow. He walked toward it and was met by the snowplow operators, who gave him a parka because he was cold. He had previously testified he saw no flags or warning signals as he drove up the hill before the accident occurred. There is no testimony in the record to indicate that there were any warning signals or flag and the appellant's employee, who had driven the truck, later testified he had placed none.

The second motion for mistrial occurred when one of the snowplow operators was being questioned on direct examination. The questions related to what had occurred after he left the scene of the accident and had driven to the nearest farm to the west to obtain a faster moving vehicle to take the plaintiff to Minot where he could receive medical help. Attorney for the plaintiff asked this witness as follows:

"Q. Then what did you do next?

"A. I asked Mrs. Larson if they had any type of post or maul to put up in the road and I found a steel fence post and I found a maul and took it back there."

Counsel for the appellant moved that the answer be stricken as not responsive. The court granted the motion and the answer was ordered stricken. The next question by counsel for the plaintiff then was:

"Q. After you secured a fence post what did you do with it?"

Counsel for the appellant objected on the grounds of incompetence, irrelevance and immateriality; that the witness was testifying what happened after the accident; that it was prejudicial and misleading. He also moved for a mistrial. The court denied the motion for a mistrial but sustained the objection to the question. This matter was not gone into again. The appellant introduced no evidence that warning devices were used and in his argument admits that none were used. If there was error, it was without prejudice. Appellant has supplied us with no authority to support his contention that prejudicial error occurred and his argument is not convincing.

Rule 61 of the North Dakota Rules of Civil Procedure provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court

or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

 The rule continues the policy established by our court in Lake v. Neubauer, N.D., 87 N.W.2d 888, and Kemmer v. Sunshine Mutual Ins. Co., 79 N.D. 518, 57 N.W.2d 856. Whether evidence should be excluded for remoteness rests largely in the discretion of the trial court.

 Whether justice requires trial to be stopped for admission of incompetent evidence is a question of fact for the trial court and will not be reviewed by the Supreme Court in the absence of an abuse of discretion. 3 Am.Jur., Appeal and Error, Sec. 971; 5A C.J.S. Appeal and Error § 1604.

"The declaration by the trial court of a mistrial is an extreme remedy to be resorted to only when there is a fundamental defect in the proceedings of a trial or when something has happened during the course of the trial which makes it evident that further proceedings therein would be productive of manifest injustice." Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, 285. See also Loveland v. Nieters, 79 N.D. 1, 54 N.W.2d 533 and State v. Tjaden, N.D., 69 N.W.2d 272.

We see no error in the trial court's denial of the motions for mistrial nor in the rulings on the evidence.

The appellant specifies that it was error on the part of the court to refuse to give his requested instruction, which reads as follows:

"You are instructed that the test of control is the ability to stop quickly and easily. When this result is not accomplished, the inference can readily be made that the car was running too fast or that proper effort to control it was not made."

The court did not instruct the jury in the words of the requested instruction. We have held it is not error to refuse to give a special instruction where the general instructions are sufficiently definite to enable the jury to understand the law of the case. Marsden v. O'Callaghan, N.D., 77 N.W.2d 522, 529; Enget v. Neff, 77 N.D. 356, 43 N.W.2d 644. We have examined the instructions given by the court. We find the court gave complete and correct statements of the law with reference to ordinary care, negligence, contributory negligence and proximate cause. He related the instructions to the disputed facts and issues involved in the case. The jury was told that it was prima facie lawful to drive upon a county highway at a speed not exceeding fifty miles per hour; that it shall presumably be lawful to drive at a speed not exceeding twenty miles per hour while traversing a grade or hill when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which the driver is proceeding. It was told that these presumably lawful speeds were subject, however, to the general rule that an automobile on a public highway must be driven at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, whether it is icy and slippery in places and of any other conditions then existing, and that no person shall drive any automobile upon a public highway at such a speed as to endanger the life, limb or property of any person.

The jury was told that the condition of the automobile and possible hazards must be given full consideration by the driver and that the propriety of any rate of speed

cannot be fixed by any definite number of miles per hour. What is a safe and unsafe speed is necessarily dependent largely on the situation and surrounding circumstances as stated in this general rule. The court also instructed the jury on the "rule of safety," known as the "assured clear distance ahead rule." This, he instructed, requires that the driver of an automobile must drive the same at such a speed as to be able to stop within the assured clear distance ahead; that a motorist cannot assume his course of travel is free of danger or obstruction and that it is the duty of the driver to maintain a vigilant lookout.

The court further instructed the jury that a person operating an automobile must at all times have it under such control that it may be stopped at any time within the range of vision of the driver, except and unless a sudden emergency should arise that could not have been reasonably anticipated by the driver. It cautioned the jury that where the emergency or situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked on his behalf. This instruction is set out in full earlier in this opinion.

Complete and adequate instructions had been given the jury in general terms with reference to the applicable statutes to enable them to apply the law of negligence, contributory negligence and proximate cause to the disputed facts in issue. The court's instructions were sufficiently broad to enable the jury to fully understand the tests of control provided by our laws. No prejudicial error arose for failure to give the requested instruction. Marsden v. O'Callaghan, supra; Enget v. Neff, supra; Peterson v. Bober, 79 N.D. 300, 56 N.W.2d 331.

In view of the sufficiency of the instruction given, we do not pass on the correctness of the requested instruction.

The appellant argued that the verdict of the jury was excessive in amount and was given under the influence of passion and prejudice. He urges the amount of $19,809.75 is completetly out of proportion and, therefore, excessive; that it is so excessive as to indicate passion and prejudice on the part of the jury. The appellant, in his argument, recognizes the general rule that a motion for a new trial upon this ground is addressed to the sound judicial discretion of the trial court, and its decision will not be disturbed unless an abuse of that discretion is clearly shown. This is the rule. We have so held in many cases. Moe v. Kettwig, N.D., 68 N.W.2d 853; Loveland v. Nieters, supra; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Neugebauer v. Anstrom, 68 N.D. 684, 283 N.W. 74; Skaar v. Eppeland, 35 N.D. 116, 159 N.W. 707; Northwest Engineering Co. v. Gjellefald-Chapman Construction Co., 57 N.D. 500, 222 N.W. 621; Baird v. Clooten, 60 N.D. 699, 236 N.W. 356; Olstad v. Stockgrowers Credit Corporation, 66 N.D. 416, 266 N.W. 109; State v. Northwest Nursery Co., 66 N.D. 704, 268 N.W. 689; Mason v. Underwood, 49 N.D. 243, 191 N.W. 949; Burdick v. Mann, 60 N.D. 710, 236 N.W. 340, 82 A.L.R. 1443; Reid v. Ehr, 36 N.D. 552, 162 N.W. 903.

To warrant the granting of a new trial on the ground of "excessive damages appearing to have been given under the influence of passion or prejudice," the amount of the verdict must appear to be so large as to induce the belief that the jury was actuated by passion and prejudice. Loveland v. Nieters, supra.

The appellant argues that the verdict is apparently a quotient verdict; however, his only argument in support thereof is that the damages found by the jury were in an odd amount and without foundation in the record. An examination of the record discloses the following losses and expenses:

Paid Mr. Frost for substitute services rendered -------------- $ 171.00

Loss of wages from extra employment ------------------- 720.00

Paid Mr. Rieser for substitute services rendered -------------- 41.00

Paid car rental ---------------- 172.00

Stipulated doctor and medical bills ------------------------- 1,205.75

Total of special damages in evidence ---------------------- $2,309.75

The jury returned a verdict of $19,809.75. Subtracting the special damages in evidence of $2,309.75 leaves a balance of $17,500, an even figure probably found as compensatory damages. Computed in this manner the amounts are not odd amounts and it may be assumed the jury was very meticulous in computing exact amounts.

The plaintiff had a life expectancy, according to the mortality tables, of thirty-four years. The plaintiff has a scar starting at about the middle of the lower lip, extending to the left and downward to a point about three inches below the left ear. It is from 10 to 12 centimeters in length and required about thirty stitches to sew up. The lower jaw was fractured in three places. One fracture was a compound fracture. Holes were drilled in the bone and the fractured bones were brought together and wired to hold them in place while healing. Several teeth, together with a part of the jaw bone in which they were embedded, were broken loose. The left alveolar nerve was severed. The jaw bone fractures healed very well and the plaintiff regained normal use of his jaw. A short time after the healing all of the teeth, both upper and lower, had to be extracted. Den-

tures were fitted. The plaintiff suffers almost daily headaches since the accident. He suffers neck pain. Because of the severance of the alveolar nerve, he has had an anesthesia (loss of feeling) in the area of his lower lip and outer point of the jaw. The plaintiff testified the scar subjected him to embarrassment. There is no way for this court to evaluate the disfigurement caused by the scar or to determine the sensitivity of the plaintiff. There are no pictures of plaintiff in evidence.

The district court denied the motion for a new trial on the ground that the verdict was excessive and given under the influence of passion and prejudice.

The function of this court on appeal is merely to review the ruling of the trial court on this motion. This review is limited to a determination of the question of whether the trial court abused its discretion, resulting in injustice. Reid v. Ehr, supra. From the evidence it appears the jury must have arrived at the amount of special damages with meticulous care. Under the circumstances the verdict cannot be said, as a matter of law, to be excessive, or that the court abused its discretion in denying the motion for a new trial on this ground. See Loveland v. Nieters, supra.

We find no error in the record that would warrant a reversal of the judgment for the plaintiff. The order denying judgment notwithstanding the verdict or, in the alternative, for a new trial, and the judgment are affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.