Everett CAMPBELL, Plaintiff and Respondent,

v.

Charles RUSSELL, Defendant and Appellant.

No. 8189.

Supreme Court of North Dakota.

Jan. 15, 1965.

Hjellum, Weiss, Nerison & Jukkala, Jamestown, attorneys for defendant and appellant.

Mackenzie & Jungroth, Jamestown, attorneys for plaintiff and respondent.

TEIGEN, Judge.

The defendant has appealed from an order denying a motion for new trial. The motion was made on two grounds: Insufficiency of the evidence to justify the verdict and excessive damages given under the influence of passion or prejudice.

The plaintiff sued the defendant for damages to his crop and summer fallow. The plaintiff's land lies adjacent and to the east

of defendant's land. The plaintiff claims the defendant ditched and drained sloughs, potholes, and low areas on his land, causing water to run onto the plaintiff's land to his damage. The plaintiff is the owner of the Southwest Quarter of Section 29. The defendant is the owner of the South Half of Section 30. The jury awarded damages to the plaintiff for the years 1960 and 1962 in the amount of $1,300.

A railroad and U. S. Highway No. 281 run parallel diagonally from southeast to northwest across the defendant's southwest quarter. Sloughs and potholes are located on both sides of the railroad track and highway. There are culverts through the railroad grade and the highway grade. There are about 11 sloughs or potholes on the defendant's land, most of which were being drained by drainage ditches which had been constructed thereon in accordance with plans furnished by the Soil Conservation Service.

The entire area of both plaintiff's and defendant's land, and adjacent lands, drain naturally toward the east. A graded county road containing two culverts, each 18 or 20 inches in diameter, is located between the plaintiff's and defendant's land. A portion of a very large slough is located on the east side of the plaintiff's land. This slough covers approximately 100 acres, approximately 10 or 11 acres of which are located upon the plaintiff's land. Surface waters running from the west to the east across the defendant's and plaintiff's land finds its way into this slough.

There was an unusual amount of moisture in the years 1960 and 1962. Surface waters from the defendant's land, as well as some from land immediately to the north and south, drained and ran across defendant's land in a generally easterly direction to the county road grade, through the two large culverts onto the plaintiff's land, and eventually into the big slough at the east edge of the plaintiff's land. It is plaintiff's claim that additional waters flowed onto his land which resulted from the drainage of sloughs

and potholes by the defendant. This caused excess waters which would not naturally have escaped eastward to run upon plaintiff's land. It is his contention that these excess waters caused the damages complained of. A long narrow grassed area extended eastward on plaintiff's land beginning at the county highway in the vicinity of the culverts. It extended to, or almost to, the big slough on the east side of plaintiff's land. In 1959 the plaintiff plowed up a portion of this grassed area but the evidence does not clearly establish what portion was plowed. It was illustrated to the jury and the trial judge upon a blackboard drawing which is not in evidence. It is the contention of the defendant that this is a natural drainway or waterway across which surface waters naturally would drain if permitted to remain in the state of nature. Both parties agree that surface waters, when they accumulate in sufficient quantity, naturally drain toward the east but the plaintiff denies this grassed area is a drainway or waterway.

The evidence is also in conflict as to the area covered by the sloughs and potholes drained by the defendant. The defendant contends that the sum of the surface areas of the potholes and sloughs which he drained equalled less than two and one-half acres. The plaintiff testified that the sum of the areas equalled approximately 20 acres. The defendant included in his estimate a large slough located on the west side of the railroad track and U. S. Highway No. 281, which he claims also drained towards the east through the railroad and highway culverts, and the water eventually found its way to the plaintiff's land.

The defendant denies that in the years 1960 and 1962 the waters from the slough west of the railroad track and U. S. Highway No. 281 drained to the east. He contends the culvert in the grade of U. S. Highway No. 281 was 16 inches higher than the culvert in the railroad grade and that the water in the years in question did not get high enough to run through the upper culvert. The plaintiff, on the other hand,

testified that he saw the water running through the culvert in an easterly direction. He testified that in 1962 it ran for about three months.

The only testimony pertaining to damage was that adduced by the plaintiff. It was uncontroverted. The case was submitted to the jury on instructions by the court which were agreeable to both parties.

The defendant's specifications of error as to the insufficiency of the evidence to justify the verdict are predicated on the following grounds: (1) There is no evidence to show that plaintiff's damages, if any, were proximately caused by the water coming from the areas drained by the defendant; (2) The evidence shows the water drained by the defendant was drained into a natural drainway which defendant was legally entitled to have kept open; (3) The evidence establishes that water from several hundred acres of other land, including plaintiff's land, drained onto the damaged area and the water drained by the defendant constituted only an insignificant percentage thereof; and (4) The plaintiff's land area flooded was so much greater than the area drained by the defendant that it was physically impossible for the water drained to flood plaintiff's land.

The defendant's specifications of error as to excessive damages given under influence of passion or prejudice are predicated on two grounds: (1) The damages allowed for loss of summer fallow were purely speculative and unfounded; and (2) Damages allowed were excessive, indicating that the same were allowed as a result of passion or prejudice.

The verdict was received from the jury on April 2, 1963. The motion for new trial was argued on June 14, 1963. The court ruled orally from the bench following the argument. He stated in part:

"From the evidence and the record, I think that the verdict of the jury should stand, that the evidence is sufficient to back up the verdict that was reached. I don't think there was any reason to believe that the damages were excessive and based upon passion and prejudice. I don't think there is anything in the record to indicate that at all. The verdict was substantially less than the amount asked in the Complaint, and this was in accordance with the evidence that was brought out."

Whether a new trial shall be granted on the ground of insufficiency of the evidence to sustain the verdict lies in the sound judicial discretion of the trial court when there is a substantial conflict in the evidence. If there is not an abuse in the exercise of such discretion, this court will not interfere. Haslam v. Babcock, 71 N.D. 363, 1 N.W.2d 335, second case 72 N.D. 581, 10 N.W.2d 239; Stokes v. Dailey, N.D., 97 N.W.2d 676; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Butler v. Aetna Insurance Co., 64 N.D. 764, 256 N.W. 214; DeRochford v. Bismarck Baking Co., 70 N.D. 523, 296 N.W. 188. Upon a motion for a new trial a margin of discretion is vested in the trial court which permits it, with a view to promoting the ends of justice, to weigh the evidence and, within certain limitations, act upon its own judgment with reference to the weight and credibility thereof. Crossen v. Rognlie, N.D., 68 N.W.2d 110; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574.

A case once tried and concluded by a verdict should not be reopened and retried unless a careful examination of the record shows that justice so requires. Sullwold v. Hoger, N.D., 110 N.W.2d 457, at 458.

The same rules apply in reviewing the second specification of error that excessive damages were given under the influence of passion or prejudice. Reid v. Ehr, 36 N.D. 552, 162 N.W. 903; Mason v. Underwood, 49 N.D. 243, 191 N.W. 949; Northwest Engineering Co. v. Gjellefald-Chapman Construction Co., 57 N.D. 500, 222 N.W. 621; Neugebauer v. Anstrom,

68 N.D. 684, 283 N.W. 74; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Loveland v. Nieters, 79 N.D. 1, 54 N.W.2d 533; Dahl v. North American Creameries, N.D., 61 N.W.2d 916; Northern States Power Company v. Effertz, N.D., 94 N.W.2d 288; Anderson v. Schreiner, N.D., 94 N.W.2d 294; Kern v. Art Schimkat Construction Co., N.D., 125 N.W.2d 149. We find there is credible evidence of record to support the amount of the verdict returned by the jury. The plaintiff testified he was damaged in the amount of $1,725 and the jury returned a verdict for $1,300.

Much of the evidence produced by both the plaintiff and the defendant was presented with the assistance of a diagram drawn by the witness upon a blackboard as they testified. The diagram, it appears, consisted of an outline of the exterior boundaries of the plaintiff's land and the defendant's land. The witnesses then drew thereon the location of sloughs, potholes, the railroad, and the two highways showing the location of various culverts, drainage ditches, etc. Much of the testimony refers to locations and areas upon the diagram and this testimony was probably perfectly clear to the jury and the trial court. However, to review the cold transcript of this testimony without the assistance of the blackboard diagrams and the witnesses' indication of various locations and courses referred to in their testimony makes an intelligible review of this evidence impossible.

We have reviewed the evidence contained in the transcript of the testimony and the exhibits admitted in evidence. We find there is evidence that the damages complained of were proximately caused by the water coming from the sloughs, potholes, and areas drained by the defendant. The plaintiff on both direct and cross-examination so testified. The defendant presented evidence in an attempt to prove that this conclusion was not possible. He relies principally on the ratio the water the sloughs would impound if not drained had to the total amount of water which flowed onto the plaintiff's land and argues that the

quantity of water released from the sloughs by the drainage was insignificant. However, there is a conflict in the evidence on this point. The plaintiff testified the sum of the areas of the sloughs drained equalled about 20 acres from a watershed of about 170 acres. Whereas, the defendant and his witnesses testified the slough areas totalled less than two and one-half acres. There is also conflict of evidence as to whether water was drained from the west side of the railroad track and U.S. Highway No. 281 to the east because of slough drainage in that area by the defendant. The defendant claims there was no drainage to the east from that area in the years in question and the plaintiff testified he saw the water running east through the culverts.

There is no evidence of the acre feet of water which the sloughs or low areas would impound if they had not been drained. However, there is evidence that some of the drainage ditches were two and one-half feet deep where they crossed the highest land in the drainage course. The drainage ditches were started level with the bottom of a slough. They were constructed to drain the water from the slough or area to be drained. They gradually slanted downwards to effect full drainage. The drainage ditches were eight feet wide at the bottom with gradual slopes on the sides, and the widest was 34 feet wide at the top. Some of the drainage ditches drained water from one slough to another. However, the drainage plan was such that it drained all waters from all sloughs and low areas in the system. The most shallow drainage ditch appears to have been six inches in depth. If we assume that the sloughs had an average depth of one foot brimful and accept the plaintiff's testimony that the sum of the areas of all sloughs drained was 20 acres, the contents of the sloughs could equal about ten acre feet of water, allowing for the sloping contours of the slough bottoms. Ten acre feet of water is sufficient water to cover 120 acres of land to a depth of one inch, or 60 acres of land to a depth of two

inches, etc. The total acreage damaged in the year 1960 was 17 acres according to the plaintiff's testimony and in the year 1963 a total of 35 acres was damaged, which includes 24 acres of summer fallow. The jury and the trial court, having the advantage of illustrated testimony in addition to the evidence referred to, could well have found the water drained onto plaintiff's land was not insignificant.

The defendant maintains that the elongated grassed area upon plaintiff's land is a natural watercourse or drainway. This is denied by the plaintiff. It appears the crop and the summer fallow damage is located along the periphery of this grassed area.

It is the plaintiff's contention that the additional waters added to the natural drainage caused the waters to rise higher than normal and overflow beyond the grassed area and onto the cultivated area. He contends that if these additional waters had not been added to the natural flow he would not have been damaged. The plaintiff has made no claim for damage to the grassed area. However, the evidence does indicate that some of the area claimed to have been damaged had been a part of the grassed area between the county highway and the big slough to the east and, therefore, if the jury considered the grassed area, plus that part formerly grassed but plowed up in 1959 as a part of a natural waterway or drainway, we may fairly assume that the jury deducted the sum of $425 from the damages testified to by the plaintiff by refusing to compensate for the grassed area plowed up under the court's instruction that one takes land subject to

its natural burdens. It appears the area plowed equalled about eight or nine acres. The evidence does not establish whether it was cropped or summer fallowed.

We find there is evidence of proximate cause, that the additional water was not an insignificant percentage, that the damages allowed for the loss of summer fallow were not speculative and unfounded, and that the damages allowed were well within the evidence adduced. If the jury found the grassed area is a natural drainway or waterway, which defendant was legally entitled to have kept open, it must have taken such fact into consideration because it reduced the amount of the damages claimed by an amount probably equivalent to the plowed-up portion of such drainway. There is no other evidence of record to mitigate the amount of damages testified to. For these reasons we are not prepared to hold that there was an abuse of discretion on the part of the trial court in refusing to grant a new trial.

The jurors were the judges of all questions of fact in this case. To the jury belonged the duty of weighing the evidence under the court's instructions and of determining the credibility of the witnesses. The trial court refused to invade the province of the jury and the order denying new trial must therefore be affirmed.

BURKE, C. J., and ERICKSTAD, J., concur.

STRUTZ and KNUDSON, JJ., did not participate.