LOFTUS v. STURGIS. (No. 6549.)

(Court of Civil Appeals of Texas. Galveston. March 20, 1914. Rehearing Denied April 16, 1914.)

1. APPEAL AND ERROR (§ 1050*) — HARMLESS ERROR — ADMISSION OF EVIDENCE — IMMATERIAL EVIDENCE.

The admission of immaterial evidence, which is not of a character calculated to influence the jury in determining the issues presented, is not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

2. EVIDENCE (§ 135*)—FRAUD—SIMILAR MISREPRESENTATIONS.

In an action for fraudulent misrepresentations by which the plaintiffs were induced to enter into a lease, evidence that similar misrepresentations were made by the defendant to other parties before and after the time they were made to plaintiff was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 392, 394, 404, 405; Dec. Dig. § 135.*]

3. WITNESSES (§ 414*)—CORROBORATIVE EVIDENCE.

In an action for fraudulent misrepresentations in leasing two theaters, where a witness for the plaintiff testified that defendant kept a false account book as to the receipts of the theaters, testimony that others had seen and examined a similar book, which contained false entries of the receipts, was admissible to corroborate the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1287, 1288; Dec. Dig. § 414.*]

4. EVIDENCE (§ 219*)—INDUCING WITNESS TO LEAVE THE STATE.

In an action for fraudulent misrepresentations, testimony of a witness for the plaintiff that defendant had induced him to leave the state in order to prevent his testifying was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 762–770; Dec. Dig. § 219.*]

5. EVIDENCE (§ 471*) — FRAUD (§ 53*) — MATERIALITY—CONCLUSION.

In an action for fraudulent misrepresentations as to the receipts from two theaters, which were leased by the defendant to the plaintiffs, where it was in issue whether such representations were false, and it was shown that the receipts when plaintiffs took charge were much less than they were represented to be, testimony by the plaintiffs' manager, called by the defendant as a witness, that he quit the employ of plaintiffs because plaintiffs knew nothing of the business and would not allow the witness to handle it as it should be handled, but was controlled in its management by two negroes, was material and a statement of fact and not a conclusion, and the exclusion of such evidence was error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471;* Fraud, Cent. Dig. § 49; Dec. Dig. § 53.*]

6. EVIDENCE (§ 471*) — FRAUD (§ 53*) — MATERIALITY—CONCLUSION.

Testimony by the same witness that the statements by defendant as to the expense of conducting the theaters were correct were material and not conclusions of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471;* Fraud, Cent. Dig. § 49; Dec. Dig. § 53.*]

7. FRAUD (§ 53*) — ADMISSIBILITY OF EVIDENCE—COMPETENCY—KNOWLEDGE OF WITNESS.

Where the evidence for the plaintiff showed that the witness was present when the lease was finally consummated, and the record does not show that the witness did not know what statements were made by defendant to plaintiff before the lease was executed, it may be inferred that the testimony of the witness referred to the statements made by the defendant before the lease was executed.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 49; Dec. Dig. § 53.*]

8. FRAUD (§ 53*) — ADMISSIBILITY OF EVIDENCE—TRUTH OF REPRESENTATIONS.

Evidence tending to show that such witness did not and could not know what the statements made by the defendant were would affect the weight of the testimony but not render it inadmissible.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 49; Dec. Dig. § 53.*]

9. FRAUD (§ 53*) — ADMISSIBILITY OF EVIDENCE—MATERIALITY.

The further testimony of the witness that, after the plaintiff took charge of the theaters, the performers were dissatisfied, which had a tendency to hurt business, was admissible in rebuttal of plaintiff's testimony that the shows were properly conducted while he had charge of them.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 49; Dec. Dig. § 53.*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Action by E. C. Sturgis against T. F. Loftus. Judgment for the plaintiff, and defendant appeals. Reversed and remanded.

Fisher, Campbell & Amerman, of Houston, for appellant. W. J. Johnson and Edward S. Boyles, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee, E. C. Sturgis, and his wife, Mrs. E. C. Sturgis, against appellant to recover damages for fraud and deceit of which the defendant is alleged to have been guilty in the lease by him to the plaintiffs of two moving picture shows and vaudeville theaters, owned and theretofore operated by defendant in the city of Houston.

The following sufficient statement of the substance of plaintiffs' petition is copied from appellant's brief: "The plaintiffs alleged: That about the 6th day of April, 1910, and on several occasions immediately thereafter, both of them at different times called upon the defendant Loftus in reference to leasing from him two negro moving picture shows and vaudeville theaters owned by him in the city of Houston, one at No. 211 Milam street, and the other at No. 514 Milam street. That Loftus represented to them that said

moving picture shows were a highly profitable and money-making business, which required no experience to run. That he exhibited to them a set of books representing that they contained a true and correct statement of all the receipts of both houses from on or about February 1, 1910, to April 5, 1910, and represented to them that the expenses of both of said theaters as a total usually varied from $150 to $200 a week, but never exceeded $250 a week, exclusive of rent. That, relying upon said representations and statements, they entered into a lease contract with said Loftus on April 9, 1910, by which they leased both of said negro moving picture shows for a period of 104 weeks, beginning with April 11, 1910, at a total rental of $250 per week. That, contemporaneously with the signing of said lease, they paid to the said Loftus the sum of $500; $250 being for a bonus or deposit to be retained by said Loftus to secure the performance by said Sturgis and wife of their part of said lease contract, and the other $250 being in payment of the first week's rent in advance for the week of April 11th to 17th. That on April 19th they paid Loftus $250 as rent for the week of April 18th to April 24th, and that on April 25th they paid him $250 as rent for the week of April 25th to May 1st. That, following the execution of said lease contract, they took possession of said show houses and undertook to conduct the same, and continued in possession thereof until on or about May, 1910, when they were forced to abandon said business. That all of the representations on the part of the said Loftus in regard to said business and the conduct thereof, and the receipts and expenses of the same, as well as the entries in said books of account, were false and willful misrepresentations, and were so known to the said Loftus at the time they were made, and that they were made for the sole purpose of inducing plaintiffs to enter into said contract. That such business under the management of said Loftus, or any other person, had never paid any such returns as represented by the entries in the said books of accounts, which was well known to Loftus at the time, and that said business had been operated at a loss by all of the previous lessees thereof. That the plaintiffs at all times managed and conducted said business in a wise, businesslike, and prudent manner, and they acted for the most part at the direction of the said Loftus in conducting said business until they discovered his fraud. That the false statements and representations made to them by Loftus became known to them only through their experience at his hands, after having paid said moneys above mentioned. That the damage incurred by them was the direct and proximate result of the conduct, false statements, and representations of the said Loftus. That, as soon as the truth about said business came to their knowledge, they rescinded said contract, and demanded a return of the money which had been paid by them to the said Loftus. That thereby they sustained actual damages in the total sum of $1,000. That all of the before-mentioned acts and representations of the said Loftus were deliberately, willfully, and maliciously done, with the express purpose and intent to defraud, swindle and injure the plaintiffs, and because thereof the plaintiffs were deceived and defrauded and injured, to their further damage in the sum of $10,000, as punitive or exemplary damages."

The defendant Loftus answered by general demurrer and general denial.

The case was tried before a jury, and on March 12, 1913, a verdict was returned in favor of the plaintiff, E. C. Sturgis, against the defendant for $744 actual damages and $5,000, exemplary damages. The jury returned their verdict in favor of the defendant against the plaintiff, Mrs. E. C. Sturgis, under a peremptory instruction of the court, after the court had determined that, as the suit was one to recover damages to the community estate, the wife was neither a necessary nor proper party.

Both of the plaintiffs testified to statements made to them by the defendant before· the contract of lease was executed of the weekly receipts of each of the shows and the weekly expenses of conducting them. Mrs. Sturgis testified that defendant showed her what purported to be an account book showing the daily receipts of each of the shows, which corroborated the statements made by the defendant as to the amount of said receipts. Both plaintiffs testified that not withstanding they conducted said shows, after they took charge under their lease, in a careful and businesslike manner, and as advised by the defendant, the receipts were much less than defendant had represented them to be, and the necessary expenses were larger, and the weekly net proceeds were insufficient to meet the amounts which they had agreed to· pay defendant under their lease contract.

The plaintiffs conducted the shows under their lease from defendant from April 11 to· May 10, 1910, when they refused to be longer bound by the lease and demanded of defendant a return of the amounts paid him. They were induced to make the lease contract by the statements made to them by the defendant of the profits of the business, and in making said lease contract relied wholly upon. defendant's representations.

In support of their claim that the representations made by the defendant were false, they proved by McKenzie, a witness in their behalf, that he was employed by defendant as an assistant in conducting the shows in question in March, 1910; that he took the· money received at each of the shows daily to defendant; and that the defendant made en-··

tries of these daily receipts in two small account books. In one of those books the amount of receipts was correctly entered, but false entries were made in the other showing the receipts to be larger than they were in fact. This witness described the books in which these entries were made; the incorrect or padded book, according to his statement, had a red cover, and the book with the correct entries had a stone colored canvas back.

The defendant testified that he made no untrue statements to plaintiffs as to the receipts or expenses of the shows, and that the account book he showed them contained true and accurate entries of the receipts from said shows. He denied that he ever kept two account books or ever made a false entry of said receipts in any account book.

It would serve no useful purpose to discuss the various assignments of error presented in appellant's brief. Most of the assignments are predicated upon the ruling of the trial court in admitting evidence over the objections of the defendant, or sustaining objections of plaintiffs to testimony offered by the defendant.

[1] In regard to the evidence admitted over defendant's objection, some of it appears to us to be immaterial, and for that reason should not have been admitted, but it was not of a character calculated to influence the jury in determining the issues presented by the pleading, and its admission would not authorize a reversal of the judgment.

[2,3] It was competent for plaintiffs, in support of their allegations of fraud and misrepresentations made to them by defendant in regard to weekly amounts received by him from his shows, to prove similar misrepresentations made by defendant to other parties before and after the time such representations were made to plaintiffs, and also to prove, in corroboration of the testimony of the witness McKenzie as to the false account book kept by defendant, that others had seen and examined books kept by the defendant similar to the one described by McKenzie, which contained false entries of the amount of the receipts from said shows.

[4] The testimony of McKenzie, to the effect that defendant had induced him to leave the state in order to prevent his testifying in this case was also admissible, as a circumstance tending to show that defendant was guilty of the charges made against him by McKenzie.

[5] The seventh assignment of error is as follows: "The court erred in refusing to permit the defendant to read in evidence the seventh direct interrogatory propounded to defendant's witness F. R. Gooch, as follows, to wit: 'Please state why you quit the employ of the plaintiff, with whom you had the contract of employment, and state what you told said plaintiff, if anything, as to why you were quitting said employment. Go into detail and state fully'—together with the answer thereto, as follows, to wit: 'The reason I quit the employ of Mr. Sturgis was because he knew absolutely nothing of the business he was engaged in, and would not let me handle same as I knew it must be handled to make a success of it. As soon as I took possession, and discovered that Sturgis had no force of character, and was being led by a negro woman named Nannie, and a negro man named Levi, I immediately went to E. C. Sturgis and made plain statement of facts, and told him that they would, in my opinion, rob him and break up his business, if he did not get rid of them at once, and I would not be responsible, as I had seen enough, and they would have to go or I would go, but he seemed to be in their control, and after much turmoil, I quit.' Which were excluded under the objection made by the plaintiff that the interrogatory called for a conclusion of the witness, and not a statement of fact, and because the same was irrelevant and immaterial, and that the answer stated a conclusion of the witness, and stated his reasons, without giving facts supporting them, and was irrelevant, immaterial, and not responsive."

The evidence shows that, when plaintiff leased the shows from defendant, they employed the witness Gooch as manager of the business. He was experienced in the moving picture show and vaudeville theater business. Had been in the business for more than eight years, during which time he had run houses of this kind for himself and as manager for others. As before shown, there was a sharp conflict in the testimony upon the issue of whether defendant's representations to plaintiffs as to the amount of the weekly receipts from his shows were false. One of the strongest circumstances, tending to show that the representations were false, was the fact that the receipts, after plaintiffs took charge, were much less than defendant had represented them to be prior to that time, and both of the plaintiffs testified in effect that the shows were properly managed after they took charge, and there was no reason for any falling off in the receipts. We think the testimony of the witness Gooch set out in this assignment was admissible as tending to rebut plaintiffs' claim that the shows were properly managed and conducted, and to account for the diminution of the receipts. The statement of the witness as to how the business was conducted, and that he, an experienced manager of shows of this kind, was not allowed to direct how these shows should be carried on, and that plaintiff allowed the two negroes named to control the management of the business, were statement of facts and not conclusions. We think this portion of the testimony was material and was not subject to the objections urged against it by the plaintiffs, and the court erred in sustaining said objections.

[6] The eighth assignment of error is as

follows: "The court erred in refusing to permit the defendant to read in evidence the tenth direct interrogatory propounded to defendant's witness F. R. Gooch, as follows, to wit: 'If you say that the defendant Loftus made a statement of the number and names of the performers and employés of said theaters, and the salaries paid to them, and the other operating expenses, then please state whether or not you afterwards found the statements so made by the defendant Loftus to be correct; and, if not, please state in what respect you found this statement to have been wrong'—together with the answer thereto, as follows, to wit: 'The statement given Sturgis and myself by Loftus was absolutely correct and the guide I work by—Mr. Loftus misrepresenting nothing.' Which was excluded under the objection of the plaintiff that the same was irrelevant and immaterial, and a statement of the conclusion of the witness, and because there was not sufficient predicate in the deposition for this introduction, and the conclusion therein stated was not binding upon the plaintiff."

One of the representations of the defendant alleged to be false by the plaintiffs was his statement as to the weekly expenses of conducting the shows. Plaintiff testified that these expenses were much greater than represented by defendant, and this was one of the grounds of recovery submitted to the jury by the charge of the court. In these circumstances it is manifest that any evidence tending to show the truth of defendant's statements to plaintiff of the expenses of conducting the shows was material. We think it equally clear that the testimony set out in this assignment tended to establish the truth of defendant's statements as to said expenses. We fail to see how the statement of the witness can be regarded as a mere conclusion, nor do we understand what is meant by the objection "that there was not sufficient predicate in the deposition for its introduction."

[7] In the reply made to this assignment in appellees' brief it is contended that the evidence does not show that the witness was present when defendant made the statements to plaintiffs which induced them to execute the lease, and therefore he could not know what said statements were. From the testimony of E. C. Sturgis, it appears that Gooch was present when the lease was finally consummated, and there is nothing in the record tending to show that the witness did not know what statements were made by the defendant to Sturgis before the lease was executed. It is a fair inference from the testimony of the witness above set out that he was referring to the statements made by defendant before the lease was executed.

[8] If there is evidence in the record tending to show that he did not and could not know what these statements were, such evidence would affect the weight of the testimony, but would not render it inadmissible. The assignment must be sustained.

[9] The ninth assignment complains of the ruling of the court in sustaining objections of plaintiffs to the testimony of the witness Gooch that, after plaintiffs took charge of the shows, "the performers were dissatisfied, the report of the house being closed, and the confusion of the disorganization of the performers had a tendency to hurt business."

It is clear that the conditions testified to by the witness would have a tendency to injure the business, and the existence of such conditions was a relevant fact which could be properly considered by the jury in rebuttal of plaintiffs' testimony that the shows were wisely and properly conducted while they had charge of them. For the reasons stated in discussing the seventh assignment, this testimony was material, and the court erred in sustaining plaintiff's objection thereto.

For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.