GREAT AMERICAN INSURANCE COM-
PANY, Appellant,

v.

Sam HORAB, Appellee.

No. 17018.

United States Court of Appeals
Eighth Circuit.

Oct. 31, 1962.

Frank F. Jestrab, of Bjella, Jestrab, Neff & Pippin, Williston, N. D., made argument for the appellant and Clausen, Hirsh, Miller & Gorman, Chicago, Ill., were with Bjella, Jestrab, Neff & Pippin, Williston N. D., on the brief.

Herbert L. Meschke, of Ilvedson, Pringle, Herigstad & Meschke, Minot, N. D., made argument for appellee and Telmar Rolfstad, Williston, N. D., was with Ilvedson, Pringle Herigstad & Meschke, Minot, N. D., on the brief.

Before MATTHES and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

By this diversity action Great American Insurance Company seeks to void two farm fire insurance policies it issued to Sam Horab. It also seeks to recover $3,000 it paid Horab under one of the policies. Horab has counterclaimed for a $13,200 loss under the other policy. Tried to a jury, a special verdict was returned favoring Horab. Thereupon the trial court dismissed the complaint with prejudice and entered judgment for Horab on his counterclaim. The insurance company has appealed.

Only two issues find their way to us:

1. Did the trial court err in refusing to let the jury hear testimony as to claimed interference by Lary Horab, a son of Sam, with the service of a subpoena on Arlyn Ydstie?

2. Did the court err in submitting to the jury the special verdict's third question having to do with intent to defraud?

The one policy was issued in July 1959. It afforded Horab insurance up to $3,000 upon baled hay, straw, and fodder on his farm in Williams County, North Dakota. On August 31, 1959, Horab notified the insurer of a loss sustained under that policy on that day. A formal claim was later filed; this described a loss in excess of the policy limit. The company paid Horab the $3,000 in December.

The other policy was one which had been issued in 1958. In March 1960 Horab asked the insurance company to extend the coverage of that policy to include a range barn at $12,000 and stacked hay, straw, and fodder at $1,200. This request was granted and an appropriate indorsement was issued and attached to the contract. On May 30, 1960, Horab notified the insurer that the property covered by this policy was totally destroyed by fire on that date. Again a formal claim was thereafter filed.

Each policy provided that it was void if the insured wilfully concealed or misrepresented any material fact or his interest in the property, or in case of fraud.

Following the filing of the second formal claim the insurance company proceeded to investigate both losses. It then concluded, among other things, that the two fires were incendiary in origin; that the actual cash value of the barn covered by the indorsement was grossly less than $12,000; that Horab's representations, both before the issuance of the policies and in the claim forms, as to values, causes of the losses, and insurable interest, were false and fraudulent; that they were made wilfully by him with intent to defraud the insurer; that this brought into play the contract provisions as to fraud and wilful concealment and misrepresentation; and that had it not been for Horab's continuing fraud and concealment the insurance company would not have paid the loss under the one policy, would not have indorsed the other policy, and would in fact have cancelled that policy. The present suit was then instituted.

A. *The alleged interference.* On the third day of the trial the insurance company's counsel requested the issuance of a subpoena to Ydstie. This proposed witness worked for Clenton Horab, another son of Sam, and lived in Williams County about 140 miles west of Minot where the trial took place. Counsel asked LaVern Miller, a nephew of Sam and later an insurance company witness, to deliver the subpoena to LeRoy Lutz, Sheriff of Williams County, for service. Miller complied. What happened that evening is covered by the testimony of four witnesses, Miller, Lutz, Ydstie, and Lary Horab, taken in chambers the next day. It is this testimony, largely undisputed, which, upon a proper offer of proof, the court refused to permit to be repeated before the jury:

At the sheriff's request, Miller accompanied Lutz when he went out to serve the subpoena. They first drove to Ydstie's

home. No one was there. Miller then suggested that they drive to the farm of neighbor Alan Sutton. On the way a vehicle passed them going in the opposite direction. Miller identified it as the car of Lary Horab. That car immediately turned around and followed the sheriff's car, as Miller described it, "right bumper to bumper practically".

The sheriff turned into the Sutton yard. Lary followed. The sheriff stopped. Lary, "quick as a shot", jumped out of his car, leaving the door open, and ran into the house.. The sheriff and Miller saw him converse there with Sutton and Ydstie. The sheriff testified that Lary told Ydstie, "You don't have to accept those papers" and "That Lutz is really trying to get us", and to "come back into the house". Miller said he heard Lary say, "I don't think you have to talk to them guys". Ydstie nevertheless came out with Lary and Sutton. When the sheriff attempted to serve the subpoena on Ydstie, Lary made other remarks. Miller testified that the sheriff told Ydstie he had a subpoena for him, that he was able to hand it to Ydstie by reaching across Lary, and that he did not have difficulty in handing it over. The sheriff accused Lary of interfering with the performance of his official duties. There is conflict as to whether the sheriff butted Lary out of the way with his shoulder. Ydstie and Lary said he did. Lutz and Miller said he did not. The sheriff told Lary that from the way he was acting he might be subject to arrest and really belonged in Jamestown (where the state mental institution is located). Ydstie testified that Lary was excited and that he was afraid Lary and the sheriff were going to fight. Lutz testified that he was "quite put out" and was "getting alarmed" and that he considered arresting Lary but did not do so because the case was a federal one. The sheriff and Miller eventually drove off.

Ydstie did come to Minot, with Lary and Clenton Horab, in response to the subpoena. He said he would not have come had he not been subpoenaed. He had been approached by Lary earlier to testify on behalf of Sam.

Lary had been in the courtroom during most of the trial and had worked for and been a partner of his father. No question as to Lary's agency for Sam is raised here.

The insurance company's position as to this evidence is that it constitutes an admission by the defendant of the false and fraudulent nature of his insurance claims and demonstrates his unwillingness to rely on the truth. Sam Horab's position is that all this testimony could not support a finding that there was physical intimidation and that it falls far short of the type of evidence of influence which the courts have allowed to go to a jury.

■■ It is generally held that, in a civil case, evidence that a litigant, or his agent, has attempted to influence or suppress a witness is receivable as an admission or as an indication of the litigant's consciousness that his case is weak or unfounded or that his claim is false or fraudulent. 2 Wigmore, Evidence, 3d Ed., 1940, § 278, pp. 120–6, and cases cited; McCormick, Evidence, 1954 Ed., § 250, p. 537; 20 Am.Jur., Evidence, § 281, p. 266; 38 A.L.R. 595. See Segal v. United States, 8 Cir., 1957, 246 F.2d 814, 818, cert. den. 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192, and Carnahan v. United States, 8 Cir., 1929, 35 F.2d 96, 67 A.L.R. 1035, 101–103, cert. den. 281 U.S. 723, 50 S.Ct. 238, 74 L.Ed. 741. Specifically, an attempt to persuade a witness not to testify is admissible against the party responsible for that attempt. Maynard v. Bailey, 1920, 85 W.Va. 679, 102 S.E. 480, 481, 9 A.L.R. 981; City of Austin v. Howard, Tex.Civ.App., 1941, 158 S.W.2d 556, 563–564; Loftus v. Sturgis, Tex.Civ. App., 1914, 167 S.W. 14, 16; Larsen v. Ward Corby Co., 1913, 184 Ill.App. 38; Baldwin v. Boulware, 1899, 79 Mo.App. 5. This evidently is the rule in North Dakota. See State v. Rozum, 1899, 8 N.D. 548, 80 N.W. 477, 480. Horab does not deny this doctrine of implied admission but questions its applicability here.

■ We are aware, of course, of the provisions of Rule 43(a), F.R.Cv.P., to the effect that evidence shall be admitted which is admissible under the rules of evidence of the United States courts or under those applied in the courts of general jurisdiction of the state in which the federal court is held, and that, in any case, the rule which favors the reception of evidence governs. Chicago Great West. Ry. v. Beecher, 8 Cir., 1945, 150 F.2d 394, 400, cert. den. 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473. On the other hand, as this court has observed,

"[T]he admission or exclusion of any evidence, as being properly relevant or being too remote, is in the federal courts a matter primarily for the trial court's judgment, and its rulings in this respect will not be disturbed except for clear and prejudicial abuse of the discretion." Hawkins v. Missouri Pac. R., 8 Cir., 1951, 188 F.2d 348, 351–352.

Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 1936, 85 F.2d 187, 193. And Rule 61, F.R.Cv.P., provides that no error in the exclusion of evidence is ground for granting a new trial or for vacating a judgment unless refusal so to do is inconsistent with substantial justice. Compare Gravseth v. Farmers Union Oil Co., N.D.1961, 108 N.W.2d 785, 794–795.

We do not condone any attempt to interfere with an officer's service of a subpoena. If Lary Horab's actions constituted an attempt on his part to hamper Sheriff Lutz' service upon Ydstie, those actions were uncalled for and improper. It is probable that his actions were due to ignorance and were performed in the heat of a pending lawsuit in which his father's honesty was being challenged; this, however, is no justification for impeding the judicial process.

■ But Lary Horab did back away, the service upon Ydstie was effected, and the witness did appear in response to the subpoena. We conclude that the exclusion of the evidence in question in this civil case did not constitute or equate with a denial of substantial justice, that

its admission or exclusion fell within the area of judicial discretion, and that there was no abuse of that discretion here. Compare Utah State Farm Bureau Fed'n. v. National Farmers Union Serv. Corp., 10 Cir., 1952, 198 F.2d 20, 24–25; Vareltzis v. Luckenbach S.S. Co., 2 Cir., 1958, 258 F.2d 78, 80–1; Kemmer v. Sunshine Mut. Ins. Co., 1953, 79 N.D. 518, 57 N.W.2d 856, 859. See American Law Institute, Model Code of Evidence, Rule 393.

B. *The special verdict's third question.* This was:

"Did the Defendant, Sam Horab, overvalue the range barn, destroyed by fire in May of 1960, so extravagantly as to negative an error in judgment and wilfully, with intent to cheat and defraud the Plaintiff insurance company?"

The jury answered, "No". The insurer here claims that the submission of this question was prejudicial error because it was ambiguous, duplicitous, and embraced mixed questions of fact and law.

The court in its general instructions to the jury, and with the approval of counsel, had said,

"You are instructed that a slight overestimate of value by the insured will not avoid the policy. The estimate must be so plain an overvaluation, that is, so extravagant as to negative an error of judgment and import an intention to defraud".

The record discloses that the objection to the question made by the insurance company was directed initially to the claimed omission of the element of mistake and not to the factors of ambiguity, duplicity and mixture now urged upon us. But it also contains further discussion between court and counsel and shows that the insurer was disturbed by the court's injection of the specific factor of wilfulness into the question, and that, while conceding the case to be one based on fraud, the insurer felt that the necessary intent to defraud could be found by the jury in extravagant overvaluation itself.

We are willing to grant, for present purposes, that the challenged question contained aspects of duplicity and mixture. It has been said that double questions should be avoided. Scarborough v. Atlantic Coast Line R., 4 Cir., 1951, 190 F.2d 935, 938. It has also been said that interrogatories must present only questions of fact. Carpenter v. Baltimore & O. R., 6 Cir., 1940, 109 F.2d 375, 379. But Rule 49(a), F.R.Civ.P., itself affords the trial court great discretion in the formulation of questions on a special verdict and contemplates that the court shall give "explanation and instruction concerning the matter thus submitted." This court has recognized, too, that, under Rule 49(a), a mixed question of fact and law is nevertheless submissible so long as it is not "submitted to the jury without an accompanying instruction explaining the legal standards which they are to apply". McDonnell v. Timmerman, 8 Cir., 1959, 269 F.2d 54, 58. See also Feldmann v. Connecticut Mut. Life Ins. Co., 8 Cir., 1944, 142 F.2d 628, 634, and Jackson v. King, 5 Cir., 1955, 223 F.2d 714, 718.

We have read the record presented to us and all the general instructions given the jury by the trial court. This has convinced us that, viewed in their entirety, the instructions adequately explained the legal standards which the jury were to apply; that the jury were not misguided or confused by the discrepancy, if any, between the instructions and the question; that this jury, which had sat through a week of trial, understood the issues which were submitted to them; and that the submission of the question was not prejudicial error. We are fortified in this conclusion by the similarity of the language objected to with the very allegations of the insurer's complaint.

We observe here, as we did in another recent fire insurance case, that,

"The reluctance of [the insurer] to accept liability for the fire loss in suit is understandable. * * * The controlling issues, however, were for the jury. If the verdict was erroneous, the error was one of fact attributable to the jury, and not an error of law committed by the court." Firemen's Ins. Co. of Newark, N.J., v. Craigie, 8 Cir., 1962, 298 F.2d 457, 459.

Affirmed.