David Larry WOLFE, Plaintiff-Appellant,

v.

E. J. VIRUSKY, M.D., Defendant-Appellee.

No. 71-1291.

United States Court of Appeals, Fifth Circuit.

Dec. 15, 1972.

See also D.C., 306 F.Supp. 519.

Berwyn B. Braden, James L. English, Lake Geneva, Wis., for plaintiff-appellant.

S. F. Memory, Jr., Waycross, Ga., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant Wolfe, on April 6, 1966, sustained severe injuries to his right arm and right leg when a large tree fell upon him pinning him to another tree. He was taken to a hospital in Baxley, Georgia, where Dr. E. J. Virusky, the defendant-appellee in this action, administered treatment for a compound comminuted fracture in Wolfe's right forearm and for a deep laceration and contusion in the right leg. Though Dr. Virusky continued to treat Wolfe periodically until October, 1966, his efforts to effect a complete cure were not entirely successful. In December, 1966 an orthopedic surgeon, upon examining the injuries, found a marked deformity in Wolfe's right wrist and forearm and a deformity in his right leg which made it impossible for him to put his heel to the ground. In February, 1969, Wolfe brought this action against Dr. Virusky for malpractice.

The complaint initially contained three counts, but Count III was dismissed by the trial court and is not at issue on this appeal. Count I alleged breach of an implied contract that Dr. Virusky possessed and would use ordinary care in the treatment of Wolfe, Count II that "plaintiff's injuries are a result of the negligence of defendant, and that plaintiff was deterred from discovering defendant's negligence by reason of the fraudulent assurances of defendant . . . ".[1]

The case was tried before a jury. At trial Wolfe produced three physicians who testified that the treatment administered to Wolfe by Dr. Virusky was inadequate when measured against the standards of the medical profession generally in the same or similar circumstances. In his defense Virusky introduced the testimony of three medical experts which tended to establish that Dr. Virusky's methods in treating Wolfe did in fact meet the required medical standards. There being an issue of fact thus raised by the evidence it was appropriate to submit the case to the jury.

[1]. As to this second count it was necessary to allege and prove fraud since the Georgia statute of limitations on actions in tort is two years, which period, absent any fraudulent assurances on the part of defendant, would have expired shortly before the suit was brought. However, since the limitations period for actions based on breach of contract is six years no such allegation or proof of fraud was necessary with respect to Count I.

Prior to submission, however, the court instructed the jury in part as follows:

"I charge you that there is a presumption that medical or surgical services were performed in an ordinarily prudent and skillful manner, and the burden of proof is on the plaintiff to prove that Dr. Virusky failed to exercise a reasonable degree of care and skill in his treatment, and also he must show that such failure to exercise a reasonable degree of care and skill was the direct cause of the injuries or the results alleged in this particular case."

The trial court deferred the question of damages and instructed the jury to determine first whether or not Dr. Virusky was liable to Wolfe in having failed to exercise the degree of care and skill required of him by law.[2] The instructions in this respect were as follows:

"Now I have not said anything to you about damages in this case, because I am going to try this case in two stages. I think that's the proper way to handle this case. The first stage is that of determining liability. If there is no liability on the part of the defendant there is no use to charge you on damages and take up a half an hour. On the other hand, if there is liability then the measure of damages becomes something of great

importance and something which I will have to charge you at that time, if necessary."

In conformity with this decision the court submitted to the jury two written special interrogatories on the issue of liability. They were:

"1. In treating the injuries received by the plaintiff, David Larry Wolfe, did Dr. Virusky exercise the degree of care and skill ordinarily employed by the medical profession generally under similar circumstances?

2. If Question No. 1 is answered 'Yes', the jury will then answer the following question:

Was there any fraud by Dr. Virusky which deterred the plaintiff in this case from filing the suit for malpractice until more than two (2) years after the medical treatment complained of?"

An affirmative answer to the first question would obviously have terminated the case in favor of the defendant, but the trial court in its instructions repeatedly assumed that question No. 1 was phrased in the opposite manner, that is, "Did Dr. Virusky *fail* to exercise the requisite degree of care and skill?" [3]

Following these instructions the jury retired to deliberate. However, on two separate occasions, apparently confused by the charge, it requested additional instructions. (It would appear that each time the inquiry was with regard to the

2. Without necessarily deciding the question we assume, as did the district court, that the standard of care required of a physician is the same regardless of whether the action is characterized as one in contract or in tort.

3. Thus, for example, the court charged:
"Now, I have prepared a form of verdict in which two questions are involved. Of course, those two questions are the key to the case. Now one is: 'In treating the injuries received by the plaintiff, David Larry Wolfe, did Dr. Virusky exercise the degree of care and skill ordinarily employed by the medical profession generally under similar

circumstances'? You will answer that 'Yes', or 'No', . . . . The second question is: 'If question one is answered 'Yes,' that is to say, if Dr. Virusky is liable, you will have to answer it. If your answer to question one is 'No,' you do not have to answer this second question. 'Was there any fraud by Dr. Virusky which deterred the plaintiff in this case from filing a suit for malpractice until more than two years after the medical treatment complained of'? Your answer to that would be 'Yes' or 'No.' As I say, you would not answer that question unless you answered the first question 'Yes'."

question of damages.) As to the first inquiry the court said:

"Now, Ladies and Gentlemen, I got word from the Foreman which indicates to me that the Jury is somewhat confused at this point as to what to do now. The question of damages is not involved at this point. Until you find liability on the part of the defendant you can't consider damages. Now, if you should answer the first question 'Yes', that is to say that if you should find that Dr. Virusky did not exercise the degree of care and skill ordinarily employed and you answer that 'Yes,' then regardless of how you answer the second question I would refer to you the matter of damages and charge you what the measure of damages would be if there is liability. Now, does everybody understand that? I am not sure that you did.

A JUROR: I don't.

THE COURT: Well, until some one is liable or is responsible for an injury let's say, then you can't consider what the damage is. You have to find first that the person is liable. Now, as soon as you find that Dr. Virusky, if you should so find, failed to exercise the ordinary degree of skill required in this particular case then you would answer 'Yes', and then I would bring you back in here and then I would charge you as to the measure of damages, how you ascertain damages, because damages is not something that you pick out of the air. It's something that I have to instruct you on. Then you would go back into your Jury room and fix the amount of damages. Does that answer your question?

A JUROR: Yes, sir.

THE COURT: All right. Retire and resume your deliberations."

An hour later the jury again requested additional instructions. The court admonished it that damages were not involved at this stage of the proceedings and then delivered an Allen charge (which is not at issue here).

Shortly thereafter the jury returned its verdict. It had answered "Yes" to Question No. 1 and "No" to Question No. 2. At this point the following colloquy took place:

"THE COURT: All right, give me the verdict, please. Now, I am going to enter a general verdict at this time, Mr. Andrews, and I will write it out. In other words, the general verdict will be: 'We, the Jury, find for the defendant.' You understand that?

THE FOREMAN: Yes sir.

THE CLERK: And he did not date it either, Judge.

THE COURT: Now is that the verdict of all of you? Is that the verdict of each of the members of the Jury?

All right, 'We, the Jury, find for the defendant.' Let the Foreman sign it."

The foreman signed the verdict and judgment accordingly was entered for the defendant. Wolfe now appeals.

His initial contention is that it was prejudicial error for the court to charge the jury that there is a presumption that the medical services were performed in an ordinarily prudent and skillful manner since as a matter of law any such presumption vanishes when, as here, evidence to rebut it is introduced. However, we find it unnecessary to decide whether it was error for the court to charge this presumption[4] and if so, whether Wolfe was prejudiced by the

---

4. The Georgia Court of Appeals, in Hopper v. McCord, 115 Ga.App. 10, 11, 153 S.E. 2d 646, 647 (1967), has held under similar circumstances that charging this presumption to the jury is not error. The Georgia court based this holding on the proposition that giving this charge was "merely instructing the jury that the burden was on the plaintiff to prove his case as alleged in his petition." In this diversity litigation, of course, we are bound by the substantive law of Georgia, but we reserve judgment as to the important question whether the federal courts are bound by a state court's determination of the *manner* in which the burden of proof can be charged, especially where there had already been a full charge dealing with burden of proof.

charge. We are of the view that Wolfe's second assignment of error, i. e., that he was materially prejudiced by the inconsistency between the court's instructions to the jury and the wording of special interrogatory No. 1, is meritorious and requires reversal.

Wolfe argues that the jury quite clearly was confused by the discrepancy between what the court said and what interrogatory No. 1 said, as evidenced by the fact that the jury twice returned for additional instructions.[5] The court had initially advised that instructions on damages would not be given unless the jury first found that Dr. Virusky was liable, yet on both occasions when the jury requested additional instructions, it inquired as to the measure of damages. Thus, it might fairly be inferred that the jury had intended to find Dr. Virusky liable but had been diverted from doing so because of its confusion over the court's charge.

We think the argument is sound. Although we have found no comparable case in the federal jurisprudence, we find guidance in cases concerning related matters. In L'Urbaine Et La Seine v. Rodriquez, 268 F.2d 1, 5 (CA 5, 1959), for example, this court noted that the only limitation on the use of special interrogatories is that of "elemental fairness, complete and adequate instructions on the applicable principles of law to be followed, and *intelligent understandable directions concerning the means of manifesting and recording the alternative jury conclusions*." (emphasis added) It is unquestioned, with the one possible exception raised by Wolfe's first issue, that the trial court properly instructed the jury in this case on the applicable law. However, there was a failure properly to communicate to the jury the means for implementing its decision and under the peculiar circumstances of this case that failure must be deemed fatal.

Of course, the lack of clearly understandable instructions to the jury with regard to how it should implement its decision would not necessarily constitute reversible error if it were otherwise apparent that the jury fully understood what it was required to do. See Great American Ins. Co. v. Horab, 309 F.2d 262 (CA 8, 1962). Such an inquiry, absent an explanation from the jury itself, will always be difficult since we can only draw inferences from the facts of record in reaching a conclusion. On this record we are unable to say that the jury was not misled, to Wolfe's detriment, by the court's charge inconsistent with the written interrogatories. Such indicators as exist are to the effect that the jury was misled.

We base this conclusion on several factors. First, the trial court repeatedly charged that a "Yes" answer to special interrogatory No. 1 would mean that Dr. Virusky was *liable*. Of course, that was not the case, since a "Yes" answer to the first question, as actually phrased, necessarily relieved him of all liability, but the jury might have followed the *court's* instructions to the letter. Moreover, the written special interrogatories themselves served further to obfuscate rather than to clarify the contradiction because they tended to reinforce the error made by the trial court. As we have indicated, a "Yes" answer to the first written question would have had the effect of completely exonerating Dr. Virusky, in tort as well as in contract, yet the second written question reads: "If Question No. 1 is answered 'Yes', the jury will then answer the following question" (which pertained to the issue whether Dr. Virusky had fraudulently deterred Wolfe from bringing an action in tort). Obviously that was incorrect. If it were meant that Dr. Virusky would be absolved of all liability by a "Yes" answer to the first question, then it was unnecessary for the jury to answer the second

5. It is noted that counsel for Wolfe did not object to this aspect of the charge and interrogatories and thus, for this court to consider it, error must be plain. We think it was so fundamental as to require us to notice it on appeal. Dowell, Inc. v. Jowers, 166 F.2d 214, 221 (CA 5, 1948).

question. Having listened to two and a half days of testimony and to the trial court's complete and accurate instructions on the applicable law, the jury, we think, at the very least, understood the nature of the issues submitted to it, and thus, would have known that if it had relieved Dr. Virusky of all liability by its "Yes" answer to the first question, the second question was immaterial. See Great American Ins. Co. v. Horab, supra. That being so we think it likely that the jury, reinforced by the court's explicit instructions, sought to reconcile this discrepancy by treating the first question as though it were phrased "Did Dr. Virusky *fail* to exercise the requisite degree of care and skill?"

This conclusion is buttressed by the circumstances surrounding the jury's two requests for additional instructions after it had retired to deliberate. These have a dual significance. First, the trial court, in giving additional instructions, re-emphasized in no uncertain terms its initial instruction that a "Yes" answer to the first question would be construed as a decision by the jury to hold Dr. Virusky liable. Second, on both occasions the jury apparently requested instructions on the issue of damages. Since the trial court had previously instructed that it would not give a charge on damages unless the jury found Dr. Virusky liable (that is, as the court had erroneously instructed, if the jury answered the first question "Yes") it is not unreasonable to assume that the jury would request a charge on damages only after it had found liability.[6]

In a related context this court has had occasion to consider the jury's dilemma when inconsistencies in the special interrogatories submitted to it have the potential for thwarting the jury's chosen verdict. In Martin v. Gulf States Utilities Co., 344 F.2d 34, 37 (CA 5, 1964), we said:

"[T]he conclusion is inescapable that the conflicts and inconsistencies in the issues as framed made it impossible for the jury to render a verdict in accordance with the convictions which they held. This conclusion is strengthened by the length of time spent by the jury in its deliberations and the numerous notes from the foreman to the Court seeking guidance and clarification of what they were supposed to do."

Both of these latter factors were present to a lesser degree in the case before us, and although the special interrogatories here did not make it strictly impossible for the jury to achieve its intended result, we are unprepared to say the sum of circumstances might not have thwarted a verdict the jury intended to find for Wolfe.

We attach no special significance to the fact that the trial court, upon receiving the special verdicts, entered a general verdict for the defendant. The jury, we note, was not polled and in any event it might have thought that its negative answer to the second interrogatory precluded recovery by Wolfe as a matter of law. However, we think it would not be particularly fruitful for us further to speculate what the jury might or might not have thought. There is sufficient evidence here to suggest that it was confused, and we are not satisfied that the cause of its confusion, i. e., the court's contradictory charge, amounted to harmless error. As this court said, in another malpractice case, "Indulging as we must in the hopeful hypothesis that the jury parses every phrase of the trial judge's charge, we must disagree with the defendant's assertion that this error was harmless." Bender v. Dingwerth, 425 F.2d 378 (CA 5, 1970). Again we indulge in this hopeful hypothesis and in so doing we necessarily assume that the

---

6. We think it unlikely that the jury would have believed that if the evidence showed that Dr. Virusky had in fact exercised the degree of care and skill required of him (a "Yes" answer to Question No. 1 as written), Wolfe would have been entitled to damages, but if he had *failed* to meet the standard of care, Wolfe would get nothing.

jury essayed precisely to follow the court's charge. If they did so their "Yes" answer to question No. 1 meant Virusky was liable. Inasmuch as the charge was misleading and inconsistent with the written interrogatories, we conclude that Wolfe must be afforded a new trial.

Reversed and remanded.

JOHN R. BROWN, Chief Judge (concurring):

I concur fully in the opinion and the decision. I merely add this concurrence to point out to District Courts the danger of entering the general verdict for the indicated prevailing party following the receipt of the jury's answers to special interrogatories. The special interrogatories and answers thereto under F.R.Civ.P. 49(a) constitutes the verdict and affords an almost foolproof mechanism for whatever action is thereafter needed by the trial Judge in passing on post-verdict motions and the appellate court in any appeal. The moment a general verdict is required to be entered, it then comes under F.R.Civ.P. 49(b) and the difference is a good deal more than the difference between (a) and (b). For F.R.Civ.P. 49(b) is a codification of an ancient common law practice seldom followed, of a general charge, a general verdict and special interrogatories. This sets in train all of the accident complications in which any possible inconsistency between the general verdict and an answer to a single question compels a new trial and automatically deprives the trial court of the flexible resources that are afforded to him under 49(a) in which, for example, the court itself may make the missing findings, if any, or is presumed to have made whatever findings are necessary to support the judgment that he enters. See Brown, Federal Special Verdicts: The Doubt Eliminator 1967, 5 Cir., 44 F.R.D. 338.